The judgment is affirmed at plaintiffs-appellants' costs.

SIMON, J., absent.

104 So.2d 163

**Adolph A. MAYERHAFER**

**v.**

**DEPARTMENT OF POLICE OF the CITY OF NEW ORLEANS.**

Nos. 43650, 44004.

June 27, 1958.

Rudolph F. Becker, Jr., James David McNeill, New Orleans, for appellant.

Alvin J. Liska, City Atty., Beuker F. Amann, Asst. City Atty., New Orleans, for defendant-appellee.

TATE, Justice ad hoc.

Consolidated herein are two appeals by Captain Adolph A. Mayerhafer from the affirmance by the Civil Service Commis-

sion for the City of New Orleans of plaintiff's discharge by the Superintendent of Police on February 21, 1956.

By plaintiff's first appeal, No. 43,650 of the Docket of this Court, he assigns as error, principally, a Commission holding that the appointing authority properly concluded that appellant knew or should have known of the existence of a graft system in the Third Police District while he was assigned as one of its three station captains from January 9, 1954 through May 18, 1954.

The second appeal, Docket No. 44,004, is grounded upon the Commission's failure to hold discriminatory, inter alia, the appointing authority's having singled out petitioner alone for permanent discharge, from approximately seven police officers allegedly similarly situated with regard to the opportunity of acquiring knowledge of the existence of a graft system.

Article XIV, Section 15, Louisiana Constitution of 1921, as amended by Act No. 18 of 1952, LSA, establishing and regulating that State civil service system, also under its terms governs the civil service system for employees of the City of New Orleans.

■ The basic pertinent provision therein is, 15(A) (1), " * * * No person in the 'State' or 'City Classified Service', having gained civil service status shall be discriminated against or subjected to any disci-

plinary action except for cause. * * * " See, also, Section 15(N) (1). The appropriate civil service commission is given "the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases," Section 15(O) (1), but "The burden of proof on appeal, as to the facts, shall be on the employee," Section 15 (N) (1) (a). The Civil Service Commission's decision shall be final on the facts, although an appeal to the Supreme Court of Louisiana is granted, restricted to questions of law. Section 15(O) (1). In such judicial review, this Court is without authority to examine the weight or sufficiency of evidence, where there is some evidence to support the finding of the Commission. Jordan v. New Orleans Police Department, 232 La. 926, 95 So.2d 607; Cottingham v. Department of Revenue, 232 La. 546, 94 So.2d 662.

■ In the present instance, the City civil service commission did not itself find that the appellant captain knew or should have known of a system of graft maintained by some of the policemen of the Third District, but found that there was before the Superintendent of Police "substantial, but conflicting, evidence" to that effect upon which this department head had based the discharge. Pretermitting a discussion of whether—rather than merely determining whether evidence existed from which the discharging department head might have concluded valid cause existed

for appellant's dismissal—the commission itself was under a duty to determine whether such valid cause existed in fact, we are constrained under the ruling in State v. Sbisa, 232 La. 961, 95 So.2d 619, to hold that there was no probative evidence by which either the appointing authority or the commission could find that the present appellant either knew or should have known of the graft system sporadically maintained in the Third District.

The evidence at the Commission hearing shows, as the Civil Service Commission found, that a system of graft had existed in the Third Police District from 1951 through 1955. In brief recapitulation, the evidence shows that Police Sgt. Bray, the chief witness for the appointing authority, was in charge of the system of bribery in the Third District whereby money was collected from four establishments by another police sergeant, for the alleged purpose of protecting such lottery and handbook operators from police interference with this illegal gambling. Bray directed the collections and divided the proceeds into three equal parts, placing (according only to his own testimony) one-third of the proceeds in an envelope which he marked "captains" and placed in the general mail basket in the office used by the three captains, which office was also generally open and available to all police at the station and used for interrogations. Bray specifically denied ever having placed the alleged bribe envelope on the desk when any captain was present in the office, nor could he recall if said envelope had ever been placed on the desk when the appellant himself was on duty at the station.

The facts are practically identical with those in State v. Sbisa, supra cit., wherein the conviction of a captain assigned to the Third District from May, 1953 to February, 1954, for malfeasance, LSA–R.S. 14:134, in that he knew or should have known of the existence of the same system of graft as is here involved (i. e., that directed and maintained by Sgt. Bray) and failed to take appropriate action, was annulled on the ground that there was no evidence of any probative value from which the conclusion could be drawn that the defendant captain therein had knowledge that Bray and others were accepting bribes from gambling establishments in the Third District. In the present case, in addition, the evidence without contradiction indicates that the graft system, always (according to the description of one of its participants) "a cloak and dagger affair," was only sporadically maintained during the Kohn investigation of police bribery, which investigation preceded and was co-extensive with appellant's brief tenure when, from detective assigned elsewhere, he was promoted and transferred to the Third District to serve as probationary captain thereof for four and a half months in 1954.

Appellant emphatically denied any knowledge whosoever of the clandestine and in-

termittent bribery system maintained by Bray. He produced uncontradicted evidence that he had requested the aid of his police supervisors and of the State police in suppressing gambling operations in the Third District during his tenure. Further, under cross-examination, most of the witnesses called by the department head to establish that a graft system existed at the Third District admitted that they were uncertain as to its existence during appellant's relatively brief tenure at the station.[1] There is absolutely no evidence in the record that Captain Mayerhafer received any bribe money or had any other notice of Bray's system of bribery in the Third District.[2]

Following our ruling in the Sbisa case that such testimony is not evidence that the police captains had actual or constructive

knowledge of the graft system maintained by some of the personnel in their district, there is no evidence herein to support a conclusion that the appellant knew or should have known of this police bribery in his district, accepting the finding of the commission (since supported by some evidence) that this system was in existence at least part of the time that appellant was stationed in the Third District. The action of the appointing authority in discharging appellant was therefore without foundation or *cause*, and the Civil Service Commission's dismissal of his appeal from such discharge must be reversed.

In view of this determination, it is unnecessary to discuss the contentions of the appellant raised by the second appeal, Docket No. 44,004, that the firing was so discrim-

1. Three of them (Dumaine, Clavin, and McGee) either positively testified that the graft system was dormant during appellant's tenure as probationary captain, or else frankly admitted that they did not know whether it existed during such time. The other two (Bray and Fritcher) admitted that the graft system was dormant when "the heat was on" during the Kohn investigation for as long as from six weeks to three months at a time and that such periods of dormancy could have occurred during part of the four and one-half months appellant was stationed in the Third District. In addition, two other witnesses (LeBlanc and Zarinski) apparently called to testify as to the Third District graft system stated that they were not stationed at the Third District during appellant's tenure there.

2. While in reply to a question whether he had discussed the matter with Captain Mayerhafer, Bray replied: "Best of my

recollection, yes, sir." (Tr. 63), the subsequent direct examination demonstrates the facts upon which this conclusion is based unmistakably shows this conclusion to be without factual foundation. (Tr. 63–64.) Moreover, upon cross-examination, Bray admitted that in the trial two months earlier of the unsuccessful prosecution of Captain Mayerhafer for malfeasance growing out of the same facts, he had admitted that he could not swear that the system of graft was actually in existence during the four months that Captain Mayerhafer was stationed at the Third District. (Tr. 72–73.) Cross-examination of Bray also called attention to the apparent conflict of this testimony at the hearing with his testimony in the Sbisa case, where he had "denied ever having discussed the matter with *any* of the captains," 232 La. 973, 95 So.2d 624. (Italics ours.)

inatory [3] as to be in violation of the constitutional prohibition of such discrimination against classified employees.

For the reasons assigned, the ruling of the Civil Service Commission for the City of New Orleans is reversed and set aside. It is ordered that appellant, Adolph A. Mayerhafer, be restored to his former position with the New Orleans Police Department.

HAMITER and HAWTHORNE, JJ., dissent.

McCALEB, Justice (dissenting in part).

I do not subscribe to the majority view that there was no "probative" [1] evidence submitted to the Civil Service Commission to sustain the dismissal of appellant from the New Orleans Police Force for permitting a graft system to be conducted

3. The substance of this complaint by appellant is contained in the public letter of a distinguished guardian of the Civil Service reform, the Honorable Ralph M. Pons, President of the Louisiana Civil Service League, set forth in Appendix I of plaintiff's brief, as appearing in the New Orleans States on January 21, 1958:

"May I submit for consideration the case of Capt. Adoph Mayerhafer. My only interest is to see fairness and justice done by the appointing authority. There can be no criticism of the civil service commission in their consideration of two appeals from Capt. Mayerhafer. Their decisions involve questions of law and timeliness of appeals. The members of the city civil service commission do a splendid job and are entitled to commendation.

"However, matters which the city civil service commission may be precluded, under law, from upsetting—the appointing authority—Supt. Provosty A. Dayries can make right and adjust.

"Inasmuch as Supt. Dayries has in the case of several appeals pending before the city civil service commission personally made request that he be permitted to reinstate men who were precisely in the same situation as Capt. Mayerhafer, it is difficult to understand why Supt. Dayries did not make the same appeal for Capt. Mayerhafer.

"If it was Supt. Dayries' intention to clean up the New Orleans police department by removing many men against

whom he believed he had cause, then why did he not stick to his purpose with all these men, who were in the same situation as Mayerhafer?

"In Capt. Mayerhafer's case he has been heard in the district court, and the district attorney was unable to make a case; the very information which was the basis for Supt. Dayries' original action in dismissing Mayerhafer could not be substantiated in court.

"I hold no special brief for Capt. Mayerhafer, or any policeman who is guilty of acts of omission, or commission. However, when you cannot prove the charges and you make an appeal to take back and reinstall six or more of these men, why punish Mayerhafer?

"Personally based on my conversations with him, and some investigation, I believe he is honest and as good as anybody Supt. Dayries is retaining on his force today.

"I hate to see injustice and unfairness worked on anyone, and I believe that Supt. Dayries' continued failure to move in the direction of reinstating this man is unfair, comparatively speaking. In my humble opinion if the other gentlemen are entitled to another chance Capt. Mayerhafer is doubly due his chance."

1. If the majority is employing the word "probative" to indicate "believable" evidence or truth, then, clearly, it steps outside of the Court's sphere of jurisdiction in civil service cases, our review being limited to questions of law.

at the Third Police District, while he was in charge of that District, and in failing (if he did not participate in these illegal activities) to know that bribe money was being collected and distributed by the officers under his command. Actually, I think that not only considerable circumstantial evidence was adduced, from which an inference could logically be drawn that appellant knew or should have known of the graft system, but there was also direct evidence which, if believed, tended to show that he was an active participant in the system.

It is conceded by the majority, and the fact is not disputed by anyone, that a system of graft existed in the Third Police District of New Orleans from 1951 through 1955 and that Police Sergeant Bray directed the collections and distributed the proceeds to the participants, which allegedly included the police captains in command of the station. Appellant's position is that he was a strict disciplinarian and that he neither participated nor had any knowledge that a system of graft was in existence. But Bray testified that it was his recollection that appellant personally discussed the graft payments with him at the police station when the former was in charge thereof and that he placed an envelope containing money with the notation "Captain" on appellant's desk. Indeed, his testimony indicates that appellant thought that he, Bray, had not ferreted out all of the illegal operations being conducted in the district which should be included in the system for he said, when asked the nature of his discussion with appellant,— "* * * what impressed me mostly was because I thought he was questioning my integrity; that there was more going on on the outside than we knew."

"Q. He was questioning your integrity? A. He didn't question but to my opinion, he was.

"Q. What did he say? A. That there was more handbooks going on outside than we knew about.

"Q. In other words, he was telling you that you weren't picking up enough money? A. The way I figured it, yes, sir."

True enough, Bray's testimony is somewhat weakened by his concession, on cross-examination, that he had admitted, during the trial of appellant for malfeasance growing out of the same facts, that he could not swear that a system of graft was actually in existence during the four months appellant was stationed at the Third District. But this merely affects the credibility of his statement; it does not erase Bray's testimony that he discussed the graft system with appellant.

Thus, the conclusion that there is no evidence at all to show that appellant was cognizant of the system is without basis as we are without the constitutional right to determine whether Bray should be be-

lieved; our only inquiry is one of law, that is, whether any evidence was submitted to the Civil Service Commission in support of the charges.

On the other hand, I believe that appellant is entitled to a new trial before the Civil Service Commission for the reason that the Commission has not made an independent finding that appellant either participated in the graft system or that he had, or should have had, knowledge of its existence during the time he was in command of the Third District. In substance, the Commission simply found that there was before the Superintendent of Police "substantial, although conflicting, evidence" to that effect and then concluded that the Superintendent did not abuse his discretion in discharging appellant on the basis of such (conflicting) evidence. In summarizing its standard of reviewing the Superintendent's disciplinary action, the Commission upheld the discharge because "the action of the Superintendent * * * was predicated on substantial evidence of such a nature that a private employer under comparable circumstance would have acted likewise."

This standard of review is allegedly based upon our decision in Broussard v. State Indus. School, 231 La. 24, 90 So.2d 73, at page 77, wherein it was stated: "Whether the personal conduct is detrimental and prejudicial to the service is largely within the discretion of the appointing authority under this rule [Civil Service Commission Rule 12.1] and the commission will not disturb the appointing authority's action in this respect unless it appears to have been arbitrary and capricious and motivated by personal prejudice and/or political reasons."

In the Broussard case, a female counselor at a school for delinquent youth was discharged because of a bigamous marriage. The quoted statement was made in dismissing appellant's argument that, even if the appellant was guilty of bigamy, such conduct did not constitute cause for discharge. As clarified by the subsequent discussion, this statement presupposes that the conduct upon which the discharge is founded has a reasonable relationship to an administrative conclusion that the employee's retention is prejudicial to the efficiency of the service in which employed. The Broussard case is not authority for the proposition that, in the absence of such prerequisites, the civil service commission should not disturb the discretion of the appointing authority in disciplining an employee, nor for the proposition that such discretion will not be disturbed if a private employer would have acted likewise in comparable circumstances.

For the civil service amendment provides that no classified employee shall be disciplined or discriminated against except for cause. Art. XIV, Sections 15(A) (1)

and 15(N) (1), La.Constitution. The civil service commission is vested with exclusive jurisdiction to decide appeals of employees from such adverse administrative action and to decide the legality thereof, Art. XIV, Sec. 15(O) (1), and thus its function, inter alia, is to decide whether the cause of discharge expressed by the appointing authority does or does not exist in fact. The commission abdicates its function of review if it states, without itself finding that the cause for discharge does in fact exist, that there was evidence before the appointing authority from which the latter *might* have concluded that cause for discharge existed.

The Civil Service Commission is an administrative board of a quasi-judicial character, and it is for that reason that this Court, on its review of the commission's decisions on questions of law alone, has applied the well-established doctrine that it will not substitute its judgment for that of the commission in the absence of a clear abuse of discretion. See Konen v. New

Orleans Police Department, 226 La. 739, 77 So.2d 24, and other cases cited in the Broussard case, supra. But this principle cannot be resorted to by the commission in deciding employees' complaints of discriminatory action; the commission hearing of these cases is not the review of an action taken by another board or tribunal; it is the first hearing of an adversary nature in which the employee has the right to present his side of the case and, although the burden of proof is on the employee, the commission cannot surrender its function of determining whether in fact cause existed for the employee's discharge by resort to a rule that the action of the appointing authority will not be disturbed unless found to be arbitrary or capricious or a rule that the discharge will be upheld if a private employer, with no constitutional prohibition against discharges without cause, might in comparable circumstances have acted likewise.

For these reasons, I think that the case should be remanded for a new trial.