129 So.2d 835 (1961)
Anthony A. VILLEMARETTE
v.
DEPARTMENT OF PUBLIC SAFETY, DIVISION OF STATE POLICE.
No. 5215.
Court of Appeal of Louisiana, First Circuit.
April 10, 1961.
Rehearing Denied May 22, 1961.
Certiorari Denied June 29, 1961.
*836 Gravel, Sheffield & Fuhrer, Alexandria, for appellant.
Louis S. Quinn, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
JONES, Judge.
Plaintiff, who was a Sergeant in the Division of State Police, was transferred from Troop E, Alexandria, Louisiana, to Troop I, Lafayette, Louisiana, on August 2, 1956, by order of the Superintendent of State Police. Alleging that he was discriminated against, he filed an appeal dated August 27, 1956 to the Civil Service Commission. Subsequently, on October 31, 1956, he received an order of removal from the Superintendent from his position with the Division of State Police, and on November 2, 1956, he appealed from this order of removal, alleging that his dismissal was for political reasons. The two appeals were consolidated for the purpose of trial by the Commission and the matter was duly tried on December 17, 1956. From a ruling of the Commission holding that both his transfer and dismissal were proper, he appealed to the Supreme Court and that court, under the provisions of Article VII, Section 30, of the Louisiana Constitution, as amended by Act No. 593 of the Acts of the State of Louisiana for the year 1960, adopted by the electorate November 8, 1960, LSA-Const., transferred the case to this court.
Article XIV, Section 15(O) (1), Louisiana Constitution of 1921 provides that the State Civil Service Commission has the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases and further provides that the decision of the Commission shall be final on the facts and limits the appeal to this court to a question of law. This court is without authority to examine the weight or sufficiency of the evidence where there is some evidence to support the findings of the Commission. Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24; Jordan v. New Orleans Police Department, 232 La. 926, 95 So.2d 607; King v. Department of Public Safety of State of Louisiana, 236 La. 602, 108 So.2d 524.
Since the two appeals were consolidated for trial before the Civil Service Commission, we will accordingly consider both of them in this opinion, the first being number 173, having to do with the appointing authority transferring the plaintiff-employee from one geographical area to another. The Commission set forth in its opinion that Rule 8.16(c) of the rules of the Commission recognizes the right of the appointing authority to change the duty station of any permanent employee from one area in the State to another and that there was no rule requiring that an employee be given written reasons for such action. Further, that the right of appeal arises only when *837 the employee alleges that he was discriminated against or subjected to disciplinary action for political reasons. (Rule 13.10 (a) and (b))
Accordingly, since the Commission was of the opinion that the employee had no right of appeal from a mere change of duty station, it dismissed the appeal number 173. We are of the opinion that this dismissal was correct for the reasons stated by the Commission and, as a matter of fact, this point is not urged in plaintiff's brief.
We will next consider appeal number 200 before the Commission. On October 31, 1956, the appointing authority advised the plaintiff that he was separated and removed from his position as Sergeant with the Division of State Police at the close of business October 31, 1956, for the following reasons:
(1) That after his transfer to Lafayette, he arbitrarily refused and neglected to perform such duties ordered by said order of the transfer in violation of the Manual of Rules and Regulations of the Division of State Police, especially Section 7, Subsection 3, thereof.[1]
(2) That on October 25, 1956 he was ordered by letter to report to Troop E Headquarters in Alexandria, Louisiana, on Tuesday, October 30, at 10:00 a. m., to be furnished transportation for the purpose of transporting him to the State Police Headquarters in Baton Rouge, in order that he might undergo a physical examination to be given by the Division's physician, and that he arbitrarily refused to comply with said order without good cause, all in violation of Section 7, Sub-section 3 of the Manual of the Rules and Regulations of the Division of State Police.
(3) That on numerous occasions he was ordered to report to a basic course of instruction at the State Police Training School and that due to declaration of physical inability, he refused and neglected to attend said Training School.
(4) That due to his frequent absence from duty because of alleged illnesses and because of alleged inability to comply with orders of the Superintendent of State Police because of an alleged physical disability, which allegations of physical disability, if true, rendered him physically unable to perform the duties demanded of a Sergeant or as a member of the State Police in any capacity.
Included in this charge were the number of days sick leave taken by the plaintiff from August of 1954 to October of 1956, which was shown to be fifty-seven in number. Also included in the charge was that he had accumulated no working time during the month of October and that he was absent from duty the whole of said month. In answer to the charges, the plaintiff, by letter dated November 2, 1956, alleged that his dismissal was purely for political reasons and that he was discriminated against because of politics. He further alleged that the reasons stated in the letter of discharge were false and untrue and, further, that his appeal to the Commission in the first instance in connection with his transfer was one of the real reasons for his dismissal.
Plaintiff filed pleas of prescription and vagueness to the charges contained in paragraph 3 to the effect that he failed to report for his course of instruction at the State Police Training School but this charge was abandoned at the time of the Civil Service hearing as well as charge number 1 to the effect that he arbitrarily refused and neglected to perform his duties at Lafayette, Louisiana, as a result of the order of transfer. The two charges heard by the Commission were numbers 2 and 4, as outlined *838 above. On the second and fourth charges, the Commission found as follows:
"On the second charge, the evidence establishes that appellant chose to accept the advice of his private physician over the orders of his employer. He says that he relied on his physician to notify his employer that he would not report for the scheduled physical examination. Appellant was not so incapacitated as to be incapable of giving the notice himself. His physician had ordered him to rest from work and recommended against his going to Baton Rouge for the examination, because from the doctor's personal viewpoint and medical standpoint, the examination was needless, appellant having just finished a thorough examination. Neither appellant nor his physician gave advance notice that appellant would not report for the examination.
"On the fourth charge the evidence is plain that appellant was incapacitated by illness from full and constant performance of his duties. On October 31, 1956, the effective date of his dismissal, he was, as charged, `physically unable to perform the duties demanded of a Sergeant or as a member of the Division of State Police in any capacity'; and his physician testified that `It was approximately shortly after Christmasthat he made a good recovery'.
"If any of the reasons given for appellant's discharge is true and constitutes lawful cause for his dismissal, the suspicion of political motive and of retaliation because he appealed from the order changing his duty station become immaterial.
"Appellant's frequent absences on the ground of illness was full justification for the order requiring him to submit to a physical examination by the medical authorities of the Division of State Police, so that his fitness to continue in his position might be determined. In ignoring this order he showed contempt for his superiors and was guilty of insubordination. The circumstance that he chose to follow the advice of his private physician cannot excuse his utter indifference to a lawful order of his superiors.
"The classified service of the State is not a sinecure nor a haven for the sick and ailing. It is designated to provide efficient public service, and it is the duty of every appointing authority to take appropriate legal action when the conduct or performance of an employee is inconsistent with the efficiency of the service. (Rule 12.1)
"The Rules make allowance for sick leave with pay for employees in the classified service (Rule 11.11 et seq.). But there is no law or rule that entitles one who has become incapacitated by illness or accident to continue indefinitely in the service; and, after the allowance of the sick leave prescribed by the Rules has been exhausted, it is a matter of administrative discretion as to how much longer the employee shall be allowed to retain his position in the classified service."
We are of the opinion that there is evidence in the record to support the findings of the Commission. It is true that the evidence shows that the plaintiff had gone to the hospital on October 24, 1956, for the purpose of an examination by Dr. Freedman and was in the hospital when he received the notice from the Superintendent of State Police to report to Baton Rouge for a physical examination on October 30th and he testified that he showed this letter to the doctor and, according to his testimony, the doctor was to notify the Superintendent that he could not report for the examination. We note from the doctor's letter to the Superintendent of State Police, which was dated October 30, 1956, that he found the plaintiff suffering from acute gastritis and acute colitis and that he *839 had placed him on a diet and medication but did not feel that he should work for the next week or ten days. The letter did not even mention the plaintiff's inability to report in Baton Rouge on October 30th for a physical examination. Of course, the doctor later testified that he and the plaintiff had talked about his inability to go to Baton Rouge for the examination and it is noted that he further testified that he was of the opinion that the plaintiff did not need an additional examination because he had just examined him. In addition to this, the plaintiff stated that on Monday morning, which was the day before he was to report for the examination, he had temperature and was unable to go but told Captain Lyles, his immediate supervisor in Alexandria, that he would go if Captain Lyles insisted that he do so. The Captain did not remember this conversation and, of course, in weighing the evidence, the Commission apparently did not believe the testimony of the plaintiff.
In the operation of an efficient State Police system, it is essential that the employees thereof obey all lawful orders of their superior officers and certainly if the plaintiff was too ill to have reported for the examination, which apparently was not believed by the Commission, then he could have easily called the Superintendent of State Police informing him of why he was unable to report for the physical examination. If the plaintiff had been telephoned by Captain Lyles on the day prior to the day he was to report for the examination, as he testified, then he should have known at that time that the doctor had not notified the Superintendent that he was unable to report for the physical examination. Thus, it seems apparent that he should have contacted Dr. Freedman to ascertain if the letter had been written but there is no evidence in the record that he did this. Further than this, he should have telephoned the Superintendent and advised him if he was unable to report for the examination. Thus, we feel that there was some evidence to support the finding of the Commission that the plaintiff under the circumstances in ignoring the order showed contempt for his superiors and was guilty of insubordination.
In connection with charge number 4, while the rules of the Commission make allowance for sick leave with pay for employees in the classified service, the evidence in this case shows that the plaintiff's sick leave had been exhausted and the Commission so found and, in addition thereto, even at the date of the hearing, on December 17th, the plaintiff was disabled and he was not found to be able to return to work until some time after Christmas of said year. Certainly, as held by the Commission, it is a matter of administrative discretion as to how much longer an employee should be allowed to retain his position in the classified service after he has exhausted his sick leave. We feel that there was some evidence before the Commission to justify the ruling upholding the appointing authority in dismissing the plaintiff because of his physical inability to perform the duties demanded of a Sergeant in the Division of State Police.
Plaintiff devotes the greater portion of his brief to the fact that there is no substantial probative evidence to support the Commission's conclusion that the appellant was guilty of contempt and insubordination and he contends that in the absence of such substantial probative evidence this court should reverse the ruling of the Commission. He cites in support thereof a statement in Mayerhafer v. Department of Police of City of New Orleans, 235 La. 437, 104 So.2d 163, 164, to the following effect: "there was no probative evidence by which either the appointing authority or the commission could find that the present appellant either knew or should have known of the graft system sporadically maintained in the Third District." (Italics ours.) He further sets forth that in order to ascertain what the court meant by probative evidence, it was necessary to examine Konen v. New Orleans Police Department, supra, *840 wherein the court stated "Where the decision is based on substantial evidence, the court may not consider the weight or sufficiency of the evidence." [226 La. 739, 77 So.2d 28]. He accordingly concludes that these cases are authority for the proposition that as long as the evidence is substantial, the court cannot as a matter of law entertain the appeal, thus abrogating the rule that where there is some evidence the court cannot as a matter of law entertain the appeal. We have carefully read the Mayerhafer case, supra, and even though the court did employ the term "probative evidence", we find that on page 165 of the opinion in 104 So.2d, the finding was "there is absolutely no evidence in the record that Captain Mayerhafer received any bribe money or any other notice of Bray's system of bribery in the Third District." While the decision in the Mayerhafer case was a four to three one, the majority reiterated the well settled rule that the court is without authority to examine the weight or the sufficiency of the evidence where there is some evidence to support the Commission. In the Konen case, supra, the court, after noting that the Commission recognized conflicts in the evidence, quoted from 62 C.J.S. Municipal Corporations § 740c(1), pp. 1523 and 1524, to the effect that where the decision is based on substantial evidence the court may not consider the weight or the sufficiency of the evidence. We further note that the court, however, found that the testimony was conflicting and confusing and that the investigation by the Police Department left much to be desired and further held that it was not the province of the court to consider the weight or sufficiency of the evidence. In a much later case, King v. Department of Public Safety of State of Louisiana, supra, 108 So.2d at page 528, the Supreme Court stated "So long as there is any evidence in the record to support the findings of the Commission we are without jurisdiction to determine the sufficiency of the evidence or the reasonableness of the cause. It is only where there is no evidence in the record to support the findings of the Commission that we are authorized to consider the evidence." Thus, since there is some evidence in this record to support the findings of the Commission, the judgment is affirmed at appellant's cost.
Affirmed.
NOTES
[1] Section 7, Rule 3 provides: Obeying Commands: No member of the Department shall wilfully disobey any lawful command of any officer, non-commissioned officer or any member of the Department senior to himself in the Department.