141 So.2d 142 (1962)
Willie P. CUNNINGHAM
v.
CADDO-SHREVEPORT HEALTH UNIT, STATE DEPARTMENT OF HEALTH.
No. 5481.
Court of Appeal of Louisiana, First Circuit.
March 7, 1962.
Rehearing Denied April 9, 1962.
Certiorari Denied May 24, 1962.
*143 Paul G. Lee, Shreveport, for appellant.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
Mrs. Willie P. Cunningham, a Civil Service employee enjoying permanent status in the Classified Service, has taken this appeal from the judgment of the Civil Service Commission sustaining her suspension and dismissal from employment by Caddo-Shreveport Health Unit, State Department of Health, State of Louisiana (hereinafter sometimes referred to simply as "defendant" or "Health Unit"), said discharge having *144 been predicated upon charges tantamount to general incompetence.
Appellant was initially employed by defendant during October, 1956 and upon the date of her dismissal had advanced to the classification Clerk IV. It is shown that a Clerk IV classification involves the performance of duties largely supervisory in nature including (but not limited to) training new employees, assignment of duties to subordinates, granting requested vacation, sick and annual leaves, arranging for replacement of employees on leave, substituting or "filling in" for absent employees, and planning procedure for handling large numbers of patients of the Health Unit on special occasions. On June 15, 1960, appellant was notified in writing by the Director of the Health Unit that appellant would be suspended with pay for a period of ten days. Subsequently, on June 20, 1960, the Director (having learned that suspension of a classified permanent employee must be without pay) notified appellant in writing that appellant would be suspended without pay effective June 20, 1960, and that formal dismissal of appellant would be sought on the following charges:
"1. You lack ability to plan, organize, and supervise the work of a number of clerical subordinates in that you have failed to familiarize yourself with the Department's regulations, procedures, and general policies, and are unable to explain the same to your subordinates.
"2. You lack the ability to understand and effectively carry out complex oral and written instructions in that you are responsible for checking the Wall Chart for errors and posting to quarterly activity reports, and have failed to do the same free of errors.
"3. You lack the ability to establish and maintain satisfactory work relationships with other employees and with the public; in that you have failed to maintain respect for your subordinate employees."
The foregoing general charges were supplemented by specific reasons for suspension contained in a letter from Dr. Virginia E. Webb (Director of the Health Unit, sometimes hereinafter referred to simply as "Director") to appellant under date of June 29, 1960. On July 15, 1960, appellant, through counsel, filed notice of appeal from her dismissal by the Director contending that the Director was not the appointing authority and that her suspension was arbitrary, discriminatory and without cause and was ordered in violation of Civil Service Rules 12.1 and 12.2 considering the letter of June 20, 1960, did not state the length of the suspension therein imposed. In addition appellant denied all of the alleged causes for her suspension. However, on July 20, 1960, appellant amended her appeal admitting certain facts but contending that they did not constitute cause for her removal. By letter dated September 9, 1960, from the Director, Mrs. Cunningham was separated from her position effective the close of business said same day, the reasons therefor being fourteen of the sixteen reasons initially set forth in the Director's letter of June 29, 1960. Following her dismissal appellant appealed therefrom again alleging that the Director was not her appointing authority and again denying all allegations of incompetency as well as charging discrimination on the part of the Director. Both appeals taken by appellant were consolidated for hearing and upon trial of the matter before the Civil Service Commission (sometimes hereinafter referred to simply as "The Commission") the Commission found that eight of the alleged reasons for dismissal were proved, six were successfully disproved by appellant and two were mere conclusions which did not constitute cause for disciplinary action. The reasons for dismissal which the Commission found to be supported by the evidence will hereinafter be set forth in detail after we have first set forth certain preliminary issues raised by appellant.
It is contended by appellant that Dr. Webb was without right or power to *145 order appellant's suspension or dismissal for the reason Dr. Webb was not the appointing authority of appellant at that time. In this regard appellant argues that Dr. Sandidge was then the Director of the Health Unit and he alone possessed authority to suspend or dismiss appellant. This Court has recently held that the Director of defendant institution is the appointing authority with respect to the employees of the Health Unit. Miller v. State Department of Health, 135 So.2d 570. The only question in this regard, therefore, is whether Dr. Webb was in fact the Medical Director of the Health Unit at the time of appellant's suspension and dismissal. Although there is some evidence to the effect that Dr. Sandidge was still the Director of the Health Unit, the evidence preponderates in favor of the finding of the Commission that Dr. Webb was actually the Director. In this regard the evidence indicates that although Dr. Sandidge had been formerly appointed Director, he was replaced in said capacity by the probational appointment of Dr. Webb to the position of Director on October 5, 1959. Dr. Webb assumed the duties of Director on October 15, 1959, and on August 23, 1960, was permanently named to the post of Director. On all dates in question Dr. Webb was Director under probationary appointment and therefore "appointing authority". In addition, the testimony of Dr. Sandidge indicates that on the dates in question he occupied the position of "Health Officer" rather than "Director".
Appellant insists that her suspension of June 15, 1960, being "with pay" was null and void since no rule of the Commission authorizes a suspension with pay, therefore, she is entitled to all the benefits and privileges of her employment during the interval between June 15, 1960, and receipt of proper notice of suspension. There is no evidence in the record to establish the fact that appellant was not paid for the period June 15, 1960 to June 20, 1960, on which latter date appellant was suspended without pay. The question would therefore, appear to be academic if not moot in the event appellant has in fact been paid.
The next contention advanced by appellant is that her suspension without pay on June 20, 1960, is invalid for two reasons: (1) the notice stated no reason for suspension but merely recited that formal dismissal of appellant was being prepared predicated upon three general charges; and (2) the notice does not state the date of expiration of the suspension imposed. With respect to appellant's first objection it is noted that Rule 12.2(a) does not require that a notice of suspension contain the reasons therefor so long as detailed reasons for such disciplinary action are furnished the employee in writing within 15 calendar days following the effective date of the suspension ordered. In the instant case detailed written reasons were in fact served upon appellant well within the 15 day period, therefore, this objection is without merit. The argument that the suspension in question was invalid because it did not state the duration thereof is likewise without foundation. Rule 12.2(b) provides that no suspension without pay shall exceed 90 calendar days without the approval of the Commission. Learned counsel for appellant maintains that this provision renders void any notice of suspension which fails to state precisely the period of suspension decreed. There is, however, no contention that the 90 day maximum permissible suspension was exceeded in this case and undoubtedly so because appellant's notice of dismissal was issued within 90 days of the effective date of her suspension. The Commission did not consider Rule 12.2 as requiring that the notice of suspension designate the duration thereof. We concur in this interpretation of the rule for the more reasonable construction thereof is that a suspension expires in 90 days unless either a shorter period be expressly stated therein or the Commission has specifically authorized suspension for more than 90 days.
The contention that appellant's suspension and dismissal were arbitrary, *146 discriminatory and motivated by bias and prejudice is based on the premise that within a short time after Dr. Webb was appointed Director of the Health Unit she commenced a campaign to effect appellant's removal in order to replace appellant with a personal friend. While there is some evidence that Dr. Webb desired to reorganize the Health Unit in order to place appellant's responsibilities in other hands and further that soon after becoming Director, Dr. Webb did begin to collect and assemble evidence of errors and omissions on the part of appellant to effect appellant's legal dismissal, Dr. Webb explained her conduct in this regard by stating that she very quickly observed appellant was incompetent and was not performing her work satisfactorily. It further appears that Dr. Webb summoned appellant, discussed with appellant the latter's shortcomings and agreed to retain appellant on a six months probationary period with the understanding appellant would remain if appellant's performance improved. At the end of the aforesaid probationary period Dr. Webb being still unsatisfied with the character of appellant's work, again summoned appellant and requested appellant's resignation. Upon the refusal of appellant to resign, Dr. Webb informed appellant that evidence of appellant's incompetency would be compiled and tabulated until such time as Dr. Webb felt she had built up a proper case to seek appellant's dismissal.
The Commission found as a fact that appellant's dismissal was not predicated upon personal prejudice as contended by appellant. Despite the denial thereof by Dr. Webb, the record contains evidence to the effect that she "did not like appellant". That there was some degree of animosity and ill feeling between these parties is amply demonstrated in the record in the form of so-called "minutes of meetings" which are in reality transcriptions of appellant's short-hand notes on several private conferences between appellant and Dr. Webb in which the latter allegedly repeatedly urged appellant to resign and made it known that if appellant did not resign dismissal proceedings would be ultimately instituted to seek appellant's removal. It further appears that Dr. Webb made no effort to assist appellant or suggest in what specific manner appellant might improve. Nevertheless, appellant did not discharge the burden incumbent upon her to prove her dismissal purely for personal prejudice. Irrespective of the Director's motives, if legal cause for appellant's dismissal existed, plaintiff has no cause for complaint and no right to have her dismissal set aside. The Commission concluded that appellant was given ample warning and opportunity to improve the quality of her performance and failed to do so. This conclusion is supported not only by the testimony of Dr. Webb but also by that of several of appellant's co-employees who testified in substance that they knew appellant to be inefficient and that at no time did Dr. Webb ever indicate to any of them that she intended to secure appellant's dismissal solely for the purpose of making the position available to one of her own personal friends.
In addition, Dr. E. Elizabeth Cassinelli, a physician formerly employed by the Health Unit, but who left such employ before the advent of Dr. Webb, testified in substance that as the supervisor of appellant she also considered appellant incompetent, had complained to Drs. Hedmeg, Sandidge and Bruce of appellant's inefficiency and in August of 1959 requested a clerical evaluation of the Health Unit.
Appellant insists her removal was without cause and in this connection we point out that the Commission found the hereinabove stated 3 charges to have been adequately proven.
With regard to Charge Number I which in general assails appellant's lack of ability to plan, organize and supervise the work of subordinates, the evidence shows that on June 6, 1960, the Immunization Clinic was understaffed resulting in unreasonably long lines of standing patients being subjected to *147 unnecessary waiting before being administered certain "shots". This oversight was attributed to appellant whose duty it was to secure the services of such extra help as might be necessary to efficiently handle the large crowds which were to be expected during such "peak periods". It appears that former similar incidents had been experienced during which congestion was relieved by the employment of an extra clerk so that patients might be divided into two lines, namely, one line for "new patients" who must be "processed" and another for "old patients" who could be administered injections merely by "pulling their cards" and directing them to the nurse whose duty it was to give the shots. On the day in question new and old patients were commingled in a single line thus resulting in unnecessary delay for all concerned. It appears that upon the congestion developing, other employees took the initiative to divide the line, assign the different duties involved and thus relieve the delay and confusion otherwise obtaining. Although appellant denies such occurrence and expressly denies there were unduly long lines on the day in question, the record contains the testimony of three co-workers to the contrary.
It appears that appellant was charged with the responsibility of planning vacations and annual leave and on an occasion when she was requested by a subordinate, Mrs. Bardwell, for a Tuesday off, appellant indicated that Tuesday was a "clinic day" and, therefore, appellant would be unable to grant the leave requested. It is uncontradicted that "clinics" are held only on Monday, Wednesday and Friday and Dr. Webb felt that after over three years experience appellant should be aware of the days on which clinics are held. Although appellant denies that the incident occurred as indicated and testified that she did not tell Mrs. Bardwell that "Tuesday was a clinic day" but rather stated that "Tuesday is not a clinic day so I suppose I can spare you", Mrs. Bardwell, appearing as a witness, contradicted appellant on this score.
On May 2, 1960, while working in the Vital Statistics Division, appellant erroneously informed an individual as to the method of having his first name corrected on his birth certificate and upon overhearing appellant wrongly advise said individual, a co-employee, Mrs. Trant, interrupted the conversation and correctly advised the individual how to proceed. Again, on this same date, appellant upon being requested by a party for advice concerning the method of obtaining a birth certificate on himself for the purpose of securing a marriage license as well as having the name of his illegitimate child properly registered under the same name as the client, appellant admitted to Mrs. Trant that appellant did not know what to tell the client and asked Mrs. Trant to give him the requested advice. While the incidents of this date are likewise denied by appellant, Mrs. Trant testified to their occurrence substantially as related herein.
Because of the position occupied by appellant it was necessary for appellant to be familiar with all phases of the unit's operations. On May 11, 1960, while substituting for a clerk in the Venereal Disease Clinic, appellant demonstrated a lack of knowledge and unfamiliarity with the procedure and records in this particular department. Appellant so mishandled the records that appellant and another employee were required to work overtime that day and spend a part of the next day straightening out the records. In this regard Dr. Webb testified that on the occasion she observed appellant "fumbling with the records as though she were obviously unfamiliar therewith". Mrs. Lilla M. Shaw, a co-worker who assisted appellant on this occasion testified that appellant did not know how to process the records and that she, Mrs. Shaw, had to show appellant the procedure. She further stated that appellant did not "close out the records properly" and did not know how to file them. Mrs. Bardwell also testified appellant was unfamiliar with the work and that she, Mrs. Bardwell, had to do the previous day's work the next day despite the *148 fact that appellant and another employee had worked overtime the afternoon before in an attempt to close out the records. It further appears that appellant incorrectly typed the wrong number on certain files despite the fact that a numbering machine was available for such purpose. Appellant's testimony in effect conceded that some errors were made on this occasion but generally creates the impression that the incidents were not as serious as contended by Dr. Webb.
Another dereliction charged to appellant is her failure to properly instruct a subordinate Clerk II with respect to her duties as relief Clerk in the "V. D." and "T. B." sections with the result that said Clerk, Mrs. Strayhorn, received her instructions from other clerks with the same rating and was compelled to supplement said instructions by self-instruction in the form of reading manuals. In this connection Mrs. Strayhorn testified that appellant instructed her with regard to the T. B. Register only and that her instructions on the remaining phases of the work, namely, X-ray T. B. Clinic and V. D. Clinic came from Mrs. Causey, Mrs. Bradwell and Mrs. Shaw, respectively, which latter instruction she augmented by reading manuals on the subjects.
The second charge lodged against appellant in substance accuses her of inability to properly fill out a quarterly activity report. More specifically appellant is said to have improperly filled out the activity report for the quarter ending September 30, 1959, with the result it was returned to the health unit on October 21, 1959, for correction of numerous mistakes therein. The testimony of Dr. Webb indicates that appellant had to make the report alone due to the illness of Mrs. Carroll who normally assisted appellant in making the report. Her testimony further indicates that three pages of the report had to be redone because of appellant's errors and that she felt that as a Clerk IV, appellant should be able to compile the report without errors. Dr. Cassinelli, a former employee of the Health Unit, testified that it was appellant's duty to make this particular report. Additionally Dr. Webb's testimony shows that no activity reports have been returned for correction since appellant's dismissal.
In substance, the third charge against appellant indicts her with having poor judgment with respect to making decisions in the light of established procedure and lack of resourcefulness in meeting and solving problems which confront her from time to time in her supervisory capacity. The basis of this charge is appellant's conduct in allegedly misunderstanding manual instructions regarding the classification of tuberculosis cases as "active" or "inactive" and as a result thereof erroneously classifying as "active" a large number of cases which rightfully should have been designated "inactive". In this connection, it appears that upon receipt of a revised State Tuberculosis Manual, appellant was instructed in its use by a Dr. McCook. Dr. Webb testified that the revised manual suggested a change in classification terminology whereby cases formerly designated "arrested" would be reclassified as either "active" or "inactive". Dr. Webb further testified that according to a strict interpretation of the revised manual, a tuberculosis case, even though classified "arrested", could not be reclassified "inactive" except upon evidence of two negative sputum cultures and chest X-ray revealing no change in the condition of the patient. Upon receipt of the manual, appellant, without consultation with any medical authority, undertook to reclassify as "active" all cases wherein there was no evidence of two negative sputum cultures. The effect of plaintiff's conduct in this regard was to materially increase the number of "active" tuberculosis patients on the reports of the Health Unit. Mrs. Cunningham reported to Dr. Webb what she had done in this respect and pointed out the effect thereof on the records of the institution. Dr. Webb, not having had time to study the revised manual arranged a conference with Doctors Bruce and Edwards (the former being head of the Epidemiology Department, New Orleans, *149 Louisiana) and Mrs. Sawyer (an employee of the Health Unit) and decided upon the basis for reclassification of such cases. Appellant had, of course, already reclassified a large number of tuberculosis cases according to her own understanding and interpretation of the manual.
It is the settled jurisprudence of this state that appeals from the decisions of the Civil Service Commission are limited to questions of law. Louisiana Constitution Article XIV, Section 15(O) (1), LSA and that the decisions of the Commission may not be disturbed where there is substantial evidence in support thereof. Konen v. New Orleans Police Dept., 226 La. 739, 77 So.2d 24; King v. Department of Public Safety of State of La., 236 La. 602, 108 So.2d 524; Mayerhafer v. Department of Police of City of New Orleans, 235 La. 437, 104 So.2d 163; Colvin v. Division of Employment Security, La.App., 132 So.2d 909.
In view of the evidence adduced on the hearing of the charges against appellant as hereinabove set forth and analyzed, we conclude there was ample evidence to support the Commission's findings in the instant case. Although the evidence was in some respects conflicting, the weight and credibility of the witnesses is a matter which addresses itself to the discretion of the trier of fact, in this instance, the Civil Service Commission. There being substantial evidence in support of the charge of incompetence brought against appellant, the finding of the Commission is binding upon the Court.
Appellant complains that the Commission arbitrarily refused to consider evidence of prior competence, deeming testimony and evidence of past performance immaterial and irrelevant to the issue of present competency. The evidence in question consisted of the testimony of Dr. Webb's predecessor, Dr. Sandidge, and efficiency ratings of appellant by Dr. Sandidge during the approximately three years Dr. Sandidge was Director of the Health Unit. In substance Dr. Sandidge testified he found appellant quite competent and consistently rated her efficiency as highly satisfactory. The Commission was clearly in error in excluding such evidence. In this regard, the Chairman of the Commission remarked that because a person does not commit murder until he is in advanced age does not necessarily mean he may not be prosecuted for such crime upon its commission. While it is quite true that proof of no past or prior criminal conduct is inconclusive of guilt or innocence with regard to a specific crime, it does not follow that a person's present ability cannot, to some extent, be indicated by past performance. Knowledge, competence and ability are a combination of innate mental capacity, training and experience. Such qualities are neither suddenly acquired nor are they instantaneously lost except through ill health or accident. (For an example of loss of ability through accident which may constitute cause for removal of a civil service employee, see Dickson v. Department of Highways, 234 La. 1082, 102 So.2d 464). Gradual loss of competence is, of course, both conceivable and possible because of the ravages of old age or personality changes induced by insidious ill health. The evidence in question was clearly admissible. Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422.
However, had the Commission considered the evidence of past competence offered on behalf of appellant herein it would not have changed the result of the instant case. The Commission most certainly was not absolutely bound by such evidence but, as the trier of fact, was entitled and obliged to consider evidence of this nature along with all other evidence dealing with appellant's alleged competency or incompetency. Moreover, the effect of Dr. Sandidge's evidence in this regard is considerably weakened by the testimony of Dr. Cassinelli to the effect that as appellant's superior during the Directorship of Dr. Sandidge, she (Dr. Cassinelli) did not consider appellant capable of properly *150 performing the duties of her position. In view of the foregoing circumstances, we fail to see wherein appellant has been prejudiced herein.
Appellant has cited several cases which are authority for the proposition that insofar as legality and sufficiency of notice are concerned, the appointing authority must abide by the rules of the Commission with respect to suspension or removal of an employee. We have considered these authorities and find them inapplicable to the case at bar for the reason, as herein previously shown, the notice and procedure followed in the instant case (excepting appellant's initial suspension with pay), complied with the rules of the Commission.
Brickman v. New Orleans Aviation Board, supra, is also cited by appellant in support of the contention that the mere fact that a civil service employee has disagreements with fellow workers, is unpleasant to work with, experiences difficulty in adjusting to change, lacks adaptability and demonstrates inability to work with others is not sufficient cause for removal. We have carefully considered the Brickman case and find it readily distinguishable from the case at bar. While it was found in the cited case that the employee involved possessed certain "personality defects", it was not found that such shortcomings adversely affected the ability, efficiency or character of the employee's performance Although it was also shown in the Brickman case that the employee was unpleasant, critical, resistant to changes in policy and procedure as well as being generally disagreeable, there was no showing that such unfavorable personality defects produced results inimical to the orderly and efficient operation of the unit of which the employee was a component. In the instant case, however, appellant is charged with specific derelictions which have been found to be of such nature and scope as to seriously affect her ability to properly perform and discharge the duties incumbent upon her. In addition, the lack of competence shown also demonstrates that appellant's inadequacy is detrimental and inimical to the efficient operation of the Health Unit considering that, inter alia, subordinates have been called upon to correct errors and mistakes made by appellant with a consequent loss of valuable employee time.
Affirmed.