SARTAIN, Judge.
Stephen H. Harmon (appellant) appeals from a decision of the Civil Service Commission upholding appellant’s dismissal as Departmental Informational Representative III with the Louisiana Wild Life and Fisheries Commission. For reasons hereinafter stated we affirm the decision of the Civil' Service Commission.
On November 13, 1968, Dr. Leslie L. Glasgow, Director of the Louisiana Wild Life and Fisheries Commission handed to defendant a letter of dismissal bearing the same date. Appellant was advised of being separated from his position for two specific reasons, namely: (1) falsification of time sheets and (2) misuse and abuse of credit card privileges. The letter of dismissal contained in the record comprises some twelve pages, with twenty-six separate items listed under Charge No. 1 together with thirteen instances of gasoline purchases in 1968. The letter also stated that from the period of July 1, 1966 through August 31, 1968 appellant’s total credit card purchases was $6,267.61 of which amount $3,996.37 was not reported. The letter also charged that appellant had purchased 12,214.5 gallons of gasoline of which amount 2,609.9 gallons were used for a new automobile from April 1, 1968 to August 31, 1968, during which time 168 quarts of oil were also purchased.
Appellant’s defense to these charges was that his position required that he be constantly traveling, obtaining information for the Commission’s magazine, “Louisiana Conservationist”, and for the entertainment of members of the press and visiting dignitaries. Appellant conceded that he would purchase items such as bait, ice, insect repellant, etc. and charge them to his credit card as automotive supplies. His authority for conducting his affairs in this manner is allegedly based on a letter dated June 26, 1959 and purportedly signed by Rudolph P. Easterly, Acting Director. The letter in essence states that appellant was authorized to purchase supplies and items “other than gas and oil” on his state credit card when in pursuit of editorial and photographic matter for the magazine and “for other official Commission use”.
*924 After a lengthy hearing consuming four days and resulting in a record consisting of 880 pages of testimony and 240 exhibits, the Commission in upholding appellant’s dismissal made the following findings of fact:
“1. The time and attendance records kept by appellant, and submitted to his superiors as a report of time worked and expenses claimed, were not an accurate recitation of the facts which they purported to present.
“2. Appellant used the major oil company credit cards issued to W L & F, and entrusted by W L & F to appellant for his use in purchasing needed fuel and related supplies for the state-owned automobiles assigned to him in furtherance of his official duties, to purchase many non-automotive items, such as ice, bait, food, nets and cold drinks.
“3. Through the cooperation of some of the service station operators with whom appellant did business, these nonautomotive items appeared on the delivery tickets as automotive items such gasoline, oil, windshield wiper blades and the like.
“4. Copies of delivery tickets received in evidence identified, in most instances, by license number a vehicle into which the purchase was purportedly delivered by the vendor, and on March 1, 1968; March 10, 1968; April 6, 1968 and April 10, 1968, purchases of gasoline charged to W L & F went into the personally owned automobile of appellant.
“5. Copies of delivery tickets received in evidence established that more than 2,600 gallons of gasoline were charged to W L & F as having gone into either the state-owned vehicle assigned to appellant, or into his personally owned automobile, during the period from April 1, 1968 to August 31, 1968. During this same period 168 quarts of oil were charged by appellant to W L & F.
“6. Among the non-automotive items purchased by appellant, charged to W L & F on the credit cards and properly identified on the delivery tickets, were lighter fluid, insecticides’, no-pest strips, flashlight batteries and place mats.
“7. The authenticity of the purported letter, or memorandum, of authority (Harmon Exhibit #8) from Rudolph P. Easterly was not established.
“8. Three (3) Directors of the W L & F held office after the date on which Harmon Exhibit #8 was purportedly issued, and each of these issued to all personnel employed by W L & F written instructions on travel and expense allowances. Such use of credit cards as was being made of them by this appellant was not authorized by these instructions. In the regulations issued by Leslie Glasgow on May 1, 1967 such use was specifically prohibited.
“9. These instructions from the three (3) Directors of W L & F who followed Mr. Easterly (L. D. Young, J. D. Hair and Leslie Glasgow), received general distribution to all of the employees of the Department, and appellant is charged with knowledge of their contents.”
In addition the Commission found that L.R.S. 39:231 which places with the Commission of Administration the duty of prescribing for state employees rules governing travel at state expense,[1] together with *925 travel directives issued by subsequent Directors of the Wild Life and-Fisheries. Commission' on August 1, 1961, February 1, 1965, and May 1, 1967.
Appellant in his appeal to this court has specified 15 errors committed by the Civil Service Commission in upholding the dismissal. These errors pertain to both fact and law. We shall hereinafter discuss the various errors but not necessarily in the order cited by appellant.
The first pleading filed by appellant other than a general denial to the charges was a motion for summary judgment to which was attached affidavits from various persons formerly connected with the Wild Life and Fisheries Commission, either as an employee or as a member of the Commission itself, supportive of the contentions that not only was appellant required to do an extraordinary amount of traveling but that he was also required to do an unusual amount of entertaining thus supporting what appears to be improper and excessive purchases and expenses. This motion was not acted upon prior to the commencement of the hearing. We do not find that the Civil Service Commission erred in not acting upon the motion for summary judgment because the affidavits attached thereto, viewed with the letter of dismissal, clearly imply serious disputes of fact.
Secondly, on the day of the first hearing plaintiff filed a peremptory exception entitled “No Cause or Right of Action”. Undoubtedly this exception was directed more to the nature and form of the letter of dismissal than to the right and capacity of the parties involved. We shall treat it as an exception of no cause of action which has as its basis the assertion that the letter of dismissal of November 13, 1968 failed to contain any citation as to a breach of any particular statute or travel regulation. Further, the exception maintains that the letter of dismissal was “too vague, disjointed and incoherent” to enable appellant to make an affirmative defense thereto. Our review of the letter of dismissal compels us to conclude that it was very specific indeed and it supported its allegations of the falsity of such time sheets by showing credit card purchases at times and places other than those shown on the time sheet. The letter of dismissal considered in its entirety can, in our opinion, lead to no other conclusion but that if supported by the evidence would be grounds for dismissal absent any particular travel regulation or rule. The letter of dismissal was more than ample to acquaint appellant with the days and dates he allegedly erroneously showed on his Hme sheets or improperly used his credit card and to accord him the opportunity to properly prepare a defense.
Now to the merits of the case itself. Appellant admitted that the time sheets that he submitted from the period of December 1, 1967 to May 18, 1968 were in fact erroneous and did not properly reflect his time, travel, or location. Appellant’s defense to this charge is two-fold. He contends that time did not permit him to properly reflect on his time sheet the exact hours that he worked, the places that he traveled and the hours that he spent on any particular task. He also asserted that for the ten years or so immediately preceding his dismissal he was in a constant state of haste and that at the end of each month when the time sheet was due as a condition to receiving his paycheck he would reconstruct to the best of his ability the happenings of the previous month. He further explained that it was a matter of general knowledge within the Department and on the part of his superiors that inaccurate time sheets were the custom and the rule rather than an exception.
With respect to the second charge, i. e., improper use of credit card privileges, appellant argues that the letter of June 26, 1959 from Mr. Easterly was a blanket authority for the purchase of items other than automotive products on his credit card which authority or mandate was never re *926 voked by subsequent Directors. Considerable evidence was offered by appellant and appellee in support of the validity and falsity respectively of the signature of Mr. Easterly. The Civil Service Commission found that appellant had failed to prove the authenticity of the document. Pretermit-ting the question of authenticity of the document, it seems strange to us that three subsequent Directors knew nothing of this letter and neither did a substantial number of the Commission members. Appellant testified that when the letter was given to him he was told to keep it in his personal file and not to divulge the contents thereof. Assuming arguendo that Mr. Easterly’s signature is authentic, later regulations issued by subsequent Directors certainly countermanded any mandate emanating from the blanket authority purportedly given to appellant in 1959 by Mr. Easterly.
There was evidence offered by appellant to the effect that on certain occasions it was necessary that he entertain on behalf of his employer and that it was necessary for him to defray the expenses thereof by the use of his automotive credit card. However, considerable evidence was offered including persons friendly to appellant that the procedure followed by appellant via the use of his credit card was improper and unauthorized and that the Department sanctioned and required a vouch-' er purchase system for such purchases. The Civil Service Commission had the benefit of all of this evidence and ruled that appellant had in fact abused his credit card privileges and had violated the regulations of his Department.
The Commission also found as a matter of fact that appellant had falsified his time sheets. This determination was in the face of evidence to the effect that other persons employed by the Wild Life and Fisheries Commission had also filed inaccurate time sheets. Dr. Glasgow acknowledged that such existed but that he had not in these instances taken disciplinary action because he felt the infractions to be minor in nature.
Appellant also charged that he was the victim of bias and prejudice on the part of the appointing authority, Dr. Leslie L. Glasgow, and that he was discharged for political reasons. These allegations stem from the proposition that appellant’s name had been mentioned by several Commission members for the position of Director upon Dr. Glasgow’s departure from the Commission. Cited as error was the Civil Service Commission’s failure to pass upon this contention. Our independent review of the record does not indicate to us that Dr. Glasgow’s action in dismissing appellant was predicated upon any bias or prejudice towards appellant nor was such action politically motivated.
Lastly, as a matter of law, appellant argues that the Civil Service Commission improperly denied him a rehearing. The rules of the Civil Service Commission do not provide for the granting of a rehearing. While an application for a rehearing is a procedural device to obtain reconsideration in an ordinary civil matter the absence of such a procedure before the Civil Service Commission is not in itself an error of law. If upon review by us we deem that the refusal to grant a rehearing had the prejudicial effect of depriving appellant of the opportunity to present additional evidence, we can remand the matter to the State Civil Service Commission with instructions. In the instant matter we do not find that the failure of the Civil Service Commission to grant a rehearing in this cause was prejudicial to the appellant.
The basic issue for resolution in this matter involves a fundamental consideration of a law and the jurisprudence with respect to a decision by the Civil Service Commission as the same relates to a question of fact. Appellant argues that the facts as found by the Civil Service Commission are not responsive to nor supported by the evidence. As stated hereinabove we find that considerable evidence was presented by both appellant and appellee and it was upon this evidence that the Civil *927 Service Commission based its findings and conclusion that the conduct complained of justified the action of the Director of the Wild Life and Fisheries Commission in terminating the services of Mr. Harmon.
Article 14, § 15(0) (1) clearly provides that the decision of the Civil Service Commission shall be final on the facts and that only a question of law is reviewable by this court. Danna v. Commissioner 'of Insurance, (1st La.App., 1967), 194 So.2d 753. In our jurisprudence various terms have been used in evaluating the evidence relied upon by the Civil Service Commission in reaching a finding of fact. We reviewed these cases in detail in Smith v. Louisiana State Board of Health (1st La. App., 1967), 201 So.2d 14. See Cottingham v. Dept, of Revenue, 232 La. 546, 94 So.2d 662, where the Supreme Court stated that where the decision is based on “substantial evidence”, the court may not consider the weight or sufficiency of the evidence. In Mayerhafer v. Department of Police of the City of New Orleans, 235 La. 437, 104 So.2d 163, the Supreme Court employed the term “probative evidence” when dealing with a review of a question of fact. In King v. Department of Public Safety, State of Louisiana, 236 La. 602, 108 So.2d 524, the Supreme Court stated that it would not review questions of fact as. found by the Commission so long as there was “any” evidence in the record to support the Commission’s findings. With these authorities in mind this court in Gremillion v. Department of Highways, 129 So.2d 805, stated “We are not concerned with the determination of whether the evidence is substantial or probative so long as there is evidence in the record on which a finding of fact might be determined by the Civil Service Commission. * * * ” For these reasons we reiterated in Smith that we may only review the decisions of the Commission on questions of fact where the record is “barren” of any evidence to support its findings because it was only under such circumstances that a question of law arises.
In the case at bar appellant admits that his time sheets were erroneous and further admits to the use of his credit cards in the manner complained of. His defense is authority and justification. The Commission concluded that appellant did not have the authority to either file improper time sheets or to make purchases with the credit card in the manner in which he did. These conclusions are based on evidence and fall within the ambit of the constitutional authority accorded to the State Civil Service Commission.
Accordingly, for the above and foregoing reasons the judgment appealed from is affirmed at appellant’s costs.
Affirmed.

. “The commissioner, with the approval of the governor, shall prescribe rules defining the conditions under which each of various forms of transportation may be used by state officers and employees and used by them in the discharge of the duties of their respective offices and positions in the state service and he shall define the conditions under which allowances will be granted for all other classes of traveling expenses and the maximum amount allowable for expenses of each class.”