FOURNET, Chief Justice.
 

 The plaintiff, Luelva E. Broussard, a classified employee, prosecutes this appeal from the action of the State Civil Service Commission affirming her dismissal as Institution Counselor at the State Industrial
 
 *27
 
 School for Colored Youths for the assigned reason
 
 [1]
 
 that she was not a fit person to be employed as a counselor to wayward youth.
 
 [2]
 

 According to the facts as found by the Civil Service Commission, the appellant married Herman Ray Graham in Baton Rouge, Louisiana, on February 26, 1952, and a day or two later left him. Some four months later, on June 4, 1952, she accompanied Graham and his attorney to the. courthouse where she read the petition in her husband’s separation suit, predicated on her abandonment, and accepted service. Despite the fact that no further steps were taken in this suit, she, on December 31, 1952, married John L. Washington in Shreveport,
 
 [3]
 
 and although' she learned through a co-worker in Juvenile Court in Shreveport as early as March or April of 1953 that he had never divorced a former wife, she continued to live with him at least until June 1, 1953, when she. moved to Baton Rouge to assume full time duties with the State Industrial School for Colored Youths, living on the campus. There, in November of 1953, Washington visited her, was introduced by her as her husband, and spent the night with her in her room. (Her testimony that they occupied separate beds on this occasion was viewed by the commission with much skepticism.) In December following she stated she requested an attorney to ascertain Washington’s true marital status and was advised by the attorney (the letter was not produced) in March or April of 1954 that Washington had never divorced his former wife. However, the record shows appellant, by personal notation
 
 [4]
 
 dated February 15, 1954, advised the personnel director of the institution she was no longer married and her name was officially “Miss Broussard,” a change to that effect being made on the records as of March 1, 1954. She did not,
 
 *29
 
 however, institute suit for an annulment .of this marriage until some time thereafter,
 
 [5]
 
 and did not receive a judgment therein until after her notice of dismissal from the state service was written and mailed.
 
 [6]
 

 In the meanwhile, and although she testified she had no official knowledge until August 9, 1954, that Graham’s separation suit against her never proceeded to final ■judgment and she was not, therefore, divorced from him, she did, prior to that date, cash one or more allotment checks sent her by him through government channels. At the hearing before the commis•sion' she testified she thought this marriage' had been terminated by
 
 annulment
 
 and that she was accepting service of ■the final papers at the courthouse on June ■4, 1952. This the commission found difficult to believe in view of her statement she read the petition in the separation suit and could have hardly been misled in this respect inasmuch as she was a college graduate; further, that although she assumed this position at the time of the hearing, in her petition for appeal to that body she alleged under sworn verifit cation she believed she was “divorced” from Graham at the time of her marriage to Washington.
 

 In this court appellant contends the Civil .Service Commission erred as a matter of law in the following respects: (1). Finding she was given formal, notice of her dismissal prior .to the “effective date thereof,” as required by Rule 12.3 of the Civil Service Commission, (2) finding she could have committed bigamy despite the fact there was no- evidence establishing she had been guilty of intentional misconduct with respect to her marital status, but, instead, showed she acted throughout in .good faith, and, more particularly at the crucial date of her second marriage, in the .belief she was free to remarry, .reliance .being placed on the criminal definition- of-bigamy and on certain statements with respect thereto as found in the jurisprudence;- (3) in its application of the rules -of evi.depce which led to the conclusion she had-“failed to disprove the facts upon which the ^appointing authority concluded ..that.--slie, Jp ‘probably guilty of bi-gamy’”; .(<!).. denying her motion to strike from the charge-.that -portion thereof stating she was guilty,,,of “probable bigamy,” which-is not “a cause legally sufficient for dismissal” under Rule 12.1 of the commission; (5) affirming her discharge on the ground of “probable” cause or suspicion when the Constitution
 
 *31
 
 permits discharge for “actual” cause only; and (6) in refusing to permit her to prove that even if in bad faith and the charge of bigamy or “probable bigamy” were true, this did not in any way render her “unfit for her employment,” since as a classified employee she could only be dismissed for conduct that resulted in the unsatisfactory discharge of her duties or impaired the efficiency thereof, and particularly so since her marital status formed no part of the required qualifications for the position she held, and her morals had no effect on her ability to properly discharge these duties. Additionally, she contends the commission erred (though not as a matter of law) in (7) excluding all evidence touching upon the asserted true cause for her dismissal under a general allegation, without particularization, that her separation was caused by personal prejudice and political reasons, and (8) in refusing to allow her to rebut evidence touching on other purported misconduct at the school that formed no part of the written grounds for dismissal.
 

 There is no merit to appellant’s contention she was not notified of her dismissal prior to the effective date thereof. The record discloses she was formally notified in writing of her dismissal in a letter dated June 24, 1955, and addressed to her by Dallas B. Matthews, superintendent of the State Industrial School for Colored Youths. In this letter, in which was enclosed a check for $145.83, covering her salary
 
 in full through June 30, 1955,
 
 she was advised: “We are paying you through
 
 that date
 
 so there can be no question but that you have received your notice prior to
 
 the effective date
 
 of your discharge, as required by the Civil Service regulations.”
 
 [7]
 
 She readily admitted she received this letter on June 27, 1955, which was three days prior to the effective date of her dismissal, i. e., June 30, 1955. It is immaterial, therefore, that in the records of the Civil Service Commission the effective date was erroneously recorded as June 24, 1955, the date of the letter of dismissal, not the date it was to take effect. (The emphasis has been supplied.)
 

 Assignments of error Nos. 2, 3, 4, 5, and 6 are equally without merit. The appellant apparently labors under a misapprehension as to the cause of her dismissal. She was not charged with the crime of bigamy. A reading of the letter of June 24, 1955, clearly establishes she was
 
 *33
 
 discharged because the appointing authority felt she was not a proper or fit person to be employed as a counselor to wayward youth. Her conduct with respect to her marriages was given as a circumstance evidencing such unfitness. The fact that the letter states it would appear under these ■ circumstances she was “probably guilty of bigamy” neither required that she be proved guilty of the crime of bigamy as known to our law (Jais v. Department of Finance, 228 La. 399, 82 So.2d 689) nor that she disprove the probability that she was guilty of bigamy, even though under the law she carried the burden of proof as to the facts. Subsection (N) (1) (a) of Section 15 of Article XIV of the Constitution of 1921 — LSÁ.
 

 Counsel’s argument that even if the appellant were guilty of bigamy this did not constitute cause for dismissal is untenable, for under the express provisions of Rule 12.1 of the commission, relied on by the appellant, it is made the mandatory “duty of the appointing authority to take such action as the circumstances may warrant to maintain the efficiency of the service” “When the conduct * * * of any employee is such” that she does not perform the duties of the office in a satisfactory manner.
 
 [8]
 
 Whether the personal conduct is detrimental and prejudicial to the service is largely within the discretion of the appointing authority under this rule and the commission will not disturb the appointing authority’s action in this respect unless it appears to have been arbitrary and capricious and motivated by personal prejudice and/or political reasons. See, Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24; Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393; Marchese v. New Orleans Police Department, 226 La. 982, 77 So.2d 742; Jais v. Department of Finance, supra; and Barclay v. Department of Commerce and Industry, 228 La. 779, 84 So.2d 188. See, also, Section 15(0) (1) of Article XIV of the Constitution of 1921, and Rule XII of the Revised Rules of the Supreme Court.
 

 It cannot be gainsaid the superintendent of the school where appellant was employed acted within the scope of his authority in concluding her personal conduct, as reflected by the above findings of fact, was such as to render her unfit to personally counsel the wayward and neglected youth under his jurisdiction and care, and, therefore, prejudicial to the efficiency of the special service he was called upon to render by reason of the nature of the school.
 
 *35
 
 ■ Nor can it be gainsaid that the commission was justified in concluding the superintendent had not abused his discretion in asserting her conduct in this respect was cause for dismissal. Consequently, this leaves nothing for us to review since our jurisdiction in matters of civil service is ■limited to errors of law alone.
 

 The assignments of error Nos. 7 and 8 are equally untenable. The commission was not required to hear evidence with respect to conclusions of the pleader, unsupported by any allegations of fact, that her separation from the service-was caused by personal prejudice and political motives, and no error was therefore committed in ■excluding such evidence. 'We think, too, the commission properly refused to allow the appellant to offer testimony to. rebut evidence brought out by the state while testing her credibility on cross-examination, and also evidence as to misconduct that formed no part of the cause for her dismissal as incorporated in the superintendent’s letter of June 24, 1955, since this is not even mentioned by the commission in its findings of fact and forms no part of its conclusion that the dismissal of the appellant in this case “is supported by ample cause.”
 

 For the reasons assigned the ruling of the' Civil Service Commission is affirmed.
 

 [1]
 

 .' A second charge — that plaintiff wilfully refused to return to her duties at the expiration of her vacation and was, therefore, presumed to have abandoned her position — was dropped by the state employing agency during the hearing before the Civil Service Commission.
 

 [2]
 

 . The charge in the letter of June 24, 1955, on which the dismissal was predicated, reads: “It has been called to my attention officially that at the present time the records of the Parishes of Bast Baton Bouge and Caddo reveal that you have two living husbands, neither of whom you have divorced; to-wit: that on February 26, 1952, you married Herman Bay Graham in the Parish of Bast Baton Bouge, from whom you have never been divorced, and on December 31, 1952, you married John L. Washington in the Parish of Caddo, from whom you have never been divorced. It would appear under the circumstances that you are probably guilty of bigamy, and
 
 we do not feel that under the circumstances you me a proper or fit person to he employed as a counselor to waywmd youths.”
 
 (The emphasis has been supplied.)
 

 [3]
 

 . In their applications for the marriage license both the appellant and Washington asserted they had never before been married.
 

 [4]
 

 . This notation reads: “My Name is officially Miss Broussard Bad huh? No Ole man (Scream)”
 

 [5]
 

 . It appears a suit against Washington filed in Webster parish in 1954, was abanr .doned.
 

 [6]
 

 . The suit was instituted in Caddo parish on June 8, 1955, the judgment was signed on June 29, 1955, ¿nd seven days later, on August 6, 1955, appellant “remarried” Graham (from whom she had never been divorced) in El Paso, Texas. The hearing in this case began in Baton Rouge on August 11, 1955.
 

 [7]
 

 . In a previous letter, dated June 20, 1955, which she received June 21, 1955, appellant had been discharged and paid through June 13, 1955, for the stated reason she had been wilfully absent from her position following the termination of her vacation at noon on June 13, 1955, and had therefore abandoned it. Because this notice was defective (not having been given prior to the effective date of the discharge) , she was reinstated and again discharged for the reasons stated in the letter of June 24, 1955.
 

 [8]
 

 . Under Kule 7.5 of the commission, the director is authorized to reject the ap- ' plication of any person for admission to tests, and may cancel the eligibility of any eligible on any eligible list, for notoriously infamous or disgraceful conduct.