McCALEB, Justice
(dissenting).
The majority holding that the factual findings of the Civil Service Commission did 'not constitute legal cause for disciplinary .action on the-part of the appointing *170 authority is not founded on a sound premise. First of all, it is apparent to me that the majority has, in reaching its conclusion, completely ignored the well-established rule of law applicable on review of findings of an administrative board, i. e., that its action will not be disturbed unless it appears to have been arbitrary and capricious. As pertains to civil service cases, it has been many times said that, if there is any evidence at all from which a conclusion could be drawn that the employee’s conduct is prejudicial to the service, the ruling will not be disturbed. Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24; Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393; Marchese v. New Orleans Police Department, 226 La. 982, 77 So.2d 742; Jais v. Department of Finance, 228 La. 399, 82 So.2d 689; Barclay v. Department of Commerce and Industry, 228 La. 779, 84 So.2d 188 and Broussard v. State Industrial School, 231 La. 24, 90 So.2d 73.
The facts of the case are not seriously disputed. As found by the Commission and in our original opinion, they portray that plaintiff, a faithful and efficient female employee for many years, developed emotional difficulties in the performance of a duty imposed by law on her immediate employer, the Aviation Board, involving the transition of an accounting system to which she had been accustomed and which she liked, to a new system which she did not think feasible and against which she developed an aversion and uncompromising attitude. The passage of time did not improve the situation. Her ability to perform her duties became increasingly difficult. She was unable to adapt herself to the task at hand and the disturbance affected her ability to work harmoniously with others.
After hearing some 25 witnesses who testified on the appeal, the Commission, in a 10-page written opinion, most of which is quoted by the majority, concluded that the assigned causes had been established. The painstaking findings of the Commission, as discussed by the majority opinion, contain a ready recognition of appellant’s previous good service but they also show, beyond any doubt, that her attitude respecting the change in the system had produced such serious mental emotion and strain that disciplinary action was in order.
In this connection, it is to be noted that the majority, in its quotations from the Commission’s findings, has omitted three paragraphs therefrom which deal with evidence that (in my opinion) evidently had bearing upon the conclusion of the Commission. I herewith reproduce these omitted paragraphs. The Commission states:
“Edward D. Rapier, the Chairman of the Aviation Board, testified that the Board recognized the apjpellant’s ability in her position. However, when he learned of .the difficulties at the Air *172 port office he conferred with the appellant and Mr. Clarence Bonnett, with whom she had been working in an attempt to straighten out the financial records. Serving as Chairman, without remuneration, Mr. Rapier was not at the airport at all times in question. However, discussions were had in the Board’s meetings for about one year concerning the appellant’s situation. Mr. Rapier testified that, in view of appellant’s record, he made every effort to reconcile the situation. Rapier finally concluded that the difficulty could not be worked out and accordingly it was decided by the Board that the appellant would be dismissed and the Assistant Aviation Director’s letter of July 21, 1956 followed. This conclusion was not made hastily but only after many months of serious reflection and various efforts to rectify the situation.”
Following the quotation from the Commission’s findings respecting the assumption by appellant of an uncompromising attitude toward the new accounting methods (see the first paragraph of page 7 of the majority opinion) the Commission declares :
“Finally, on July 13, 1956, the appellant addressed a note in her own handwriting to Mr. Johnson, which reads as follows:
“Fri July 13, 1956.
“Mr. Johnson—
“Regret extremely having to be out Wed. aft. & Thursday. There was more than 1 reason for bringing on the headache.
“In order not to hold up my work too long, I will only take 2 weeks now, and some other time the balance, at opportune time.
“In the light of 1 of the reasons — I earnestly request being advised if this situation is to continue.
“If it is — I can’t endure it any longer & will guide myself accordingly.
“I have my ticket, travellers cks and room reservation, and I would like to go on trip to Fla.
“(signed) Fannie W. Brickman”
“Assistant Aviation Director Cruze, to whom this note was relayed, testified that he interpreted this note to mean that, if those in authority above Mrs. Brickman, and particularly Mr. McGee, were not removed, she would resign. Stated in another manner, Cruze considered this note an ultimatum. This interpretation was not questioned or denied by appellant.”
Later on in its opinion the Commission stated:
“Since the appellant’s discharge, the installation of the new accounting system has been completed and has been *174 working satisfactorily according to the testimony of Assistant Comptroller Sutherland. Purchasing for the Airport is now done by the City purchasing division, and receipts and disbursements are handled through the City Treasurer’s department, with resulting decreased fiscal control by the Aviation Board and a decrease of the accounting load in the operation of the Airport on the part of the Airport staff.”
To say that an employee has the right to disagree with his employer’s policies and to criticize such policies may or may not be justifiable, depending upon the facts of the particular case. But to conclude, as the majority has in this case, that a person in classified service is immune from disciplinary action merely because she has been a faithful worker and could, under normal conditions, perform the tasks assigned to her — when, as shown by the evidence, the employee’s adamant attitude extended over a period of months and delayed the change in the accounting system which was required by law — is to cast aside all realities of an employer-employee relationship and substitute, in the name of civil service, a new connotation of thé word “cause”.
Of course, if under the facts found by the Commission there is no real and substantial relation between the conduct of the employee and the; efficient operation of the public service, no “cause” is presented for disciplinary action and, should the Commission under such circumstances sustain the discrimination, a question of law would be presented here on appeal from the Commission’s ruling. But, in employing this legal ground as the foundation of its decision, the Court should be mindful that it is not primarily its function to determine whether the cause established as a basis for disciplinary action does or does not impair the efficiency of the service. That question, in my view, is fundamentally within the orbit of the Commission’s duties. Therefore, when reviewing the Commission’s ruling, we should refrain from substituting our own concepts for those of the Commission and give full application to the rule, above cited herein, that the administrative finding will not be disturbed in the absence of a clear showing that it is arbitrary and capricious.
On the other hand, I am of the opinion that the Civil Service Commission erred in failing to make an independent finding of its own that the penalty of dismissal was meet and proper under the facts and circumstances of the case. While noting that appellant had worked faithfully and efficiently for almost 15 years in the service of the City of New Orleans and that she was discharged within four months of the time she would have become eligible for retirement, the Commission simply took the position that, since the appointing author *176 ity had deduced that her inability to adjust herself to the changes in accounting methods constituted cause for her dismissal, it would not disturb his action as it did not appear to be arbitrary and capricious. As authority for this position, the Commission quoted a statement contained in Broussard v. State Industrial School, 231 La. 24, 90 So.2d 73, 77, reading as follows:
“Whether the personal conduct is detrimental and prejudicial to the service is largely within the discretion of the appointing authority under this rule (Civil Service Commission’s Rule 12.1) and the commission will not disturb the appointing authority’s action in this respect unless it appears to have been arbitrary and capricious and motivated by personal prejudice and/ or political reasons.” (Words in parenthesis mine).
The foregoing is an expression of the well-established rule throughout this country that a court, in reviewing discretionary action of an officer, board or commission will not substitute its judgment for that of the .officer, board or commission in the absence of a showing of clear abuse of discretion. See 62 C.J.S. Municipal Corporations § 740(1); 10 Am.Jur. “Civil Service”, Section 14 and Kaplan “The Law of Civil Service”, pp. 239-241.
As applied to a court of review of administrative action, there cannot be any doubt as to the soundness of the quoted statement. But, unfortunately, according to the literal import of the language used, the pronouncement appears to apply broadly to reviews by civil service commissions as well as the courts and these commissions have thus considered it, stating in this and other cases that they will not disturb the action of the appointing authority in disciplinary cases unless they find it to be arbitrary and capricious. While it must be conceded that the statement is open to this construction, I do not think it was ever the intention of the Court to convey to the civil service commissions that they were not required to decide for themselves on all appeals, in cases involving disciplinary action, that the action taken by the appointing authority was justified in fact and in .law.
By Section 15(0) (1) of Article 14 of the Constitution it is the function of the civil service commissions, inter alia, “ * * * to hear and decide all appeals and the legality of all removal and disciplinary cases”. Accordingly, in making a determination of any case brought before them, it is their duty to decide from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if this question is determined afr firmatively, it must then be resolved whether the dereliction is such as to justify the punishment imposed. For, if the penalty is not commensurate with the asserted cause for the disciplinary action, then, • unques *178 ■tionably, there has been discrimination against the employee in violation of the law. The Commission abdicates its function of review unless it makes an independent finding on these questions, forasmuch as the issue on appeal in employee disciplinary cases is not confined to the question of whether the action of the appointing authority is arbitrary and capricious but, rather, whether the disciplinary action was founded on cause which necessarily includes inquiry into the question of whether the penalty inflicted is warranted by the facts.[1]
I am aware that there is considerable authority throughout this country to the effect that, unless the civil service statute authorizes the reviewing agency to modify the punishment directed by the appointing authority, the reviewing agency may not change the penalty or exact any conditions in affirming the determination of the appointing authority. See Kaplan, “The Law of Civil Service”, p. 238 and the cases cited in support of the text. However, an examination of the statute applicable to the City Civil Service Commission, particularly R.S. 33:2424, which has been continued in effect by Section 15 (P) (6) of Article 14 of the Constitution (see Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393), discloses, in my opinion, that the Commission is not only vested with the power to alter the penalty imposed by the appointing authority but that it is its duty to do so when it believes that the punishment is too harsh or otherwise not commensurate with the conduct upon which the disciplinary action is based. R.S. 33 :2424 declares, in substance, that the dismissed employee may “demand a hearing to determine the reasonableness of the action, *. * * ”; that, after hearing the Commission shall approve or disapprove the action and that, in case of disapproval, it “shall reinstate the employee under the conditions which it deems proper, and may order full pay for lost time.” (All italics mine).
Since the Commission in this case did not decide for itself that the action taken by the appointing authority in discharging appellant was justified by the acts which formed the basis of the appointing author *180 ity’s action, I would remand the case to the Commission for its determination of this question.

. That this sort of review by commissions and other similar agencies is envisioned by civil service laws is well stated by Mr. Kaplan in his treatise “The Law of Civil Service”. He observes, on page 241: “Exclusion of the courts from reviewing such administrative determination places a responsibility on an admin- ' istrative reviewing agency to do justice to both the removing authority and the employee involved. Review by the court usually limits the court to either confirming or overruling tile administrative determination. The personnel agency invariably has much greater scope of authority to modify the extent of disciplinary action (unless the statute confines its determination to an affirmance or reversal). * * * ”