SARTAIN, Judge.
This appeal comes to us from the Civil Service Commission (hereinafter referred to as Commission) which affirmed the dismissal of appellant’s employment with the State Department of Institutions (hereinafter referred to as Department) as a Correctional Officer II at the Louisiana State Penitentiary. As an employee of this institution appellant had to sign a copy of General Order Number 26 — “Personal conduct rules and regulations for all employees” — which, inter alia, provides:
“16. No one may trade or barter with inmates or loan them money or borrow from them. If you desire to purchase an article manufactured by any of the authorized inmate businesses, you may do so by contacting the business office and going through the prescribed channels. A person violating this regulation will be subject to stringent disciplinary action.”
On May 25, 1966, appellant was notified by letter from Wingate M. White, Director of Institutions, that he was being removed from his position as Correctional Officer II at the close of business on May 31, 1966, for a violation of the rule and regu *156 lation quoted above and for denying knowledge of the violation to his superiors. The incident described as the violation was the contacting of inmate Olin D. Wyatt at ap--proximately 5 :00 P.M. on May 20, 1966 to confirm the sale of a truck to the said inmate for the price of $250.00.
The findings of fact and conclusions by the Commission are as follows:
“The matter was heard by us on July 6, 1966. A number of witnesses testified at the hearing and the evidence indicates that Olin D. Wyatt, an inmate guard serving a term for forgery at the Penitentiary, was eligible for discharge on Friday night, May 20, 1966. Wyatt, who testified as a witness, stated that his family was supposed to come down to the Penitentiary to pick him up at the discharge gate about midnight. However, in a signed statement he made on that same night when he was detained for questioning by the Chief Outside Security Officer, he declared that he had actually made a deal with appellant to buy his pickup truck for the sum of $250.00, and that appellant was to deliver the truck to him at the discharge gate some time after midnight and after he was discharged from the Penitentiary. This signed statement, marked for identification “Appellee I”, was written entirely in the handwriting of said witness.
Captain Norris, the Chief Outside Security Officer, who also testified, stated that he “shook” Wyatt down (searched him) at the discharge gate and found a roll of bills containing exactly $250.00 in one of his pockets and a considerable amount of additional money in his other pockets separate from the $250.00. When asked to explain why he had this roll of bills containing exactly $250.00 in one pocket separate from his other money, Wyatt could give no satisfactory explanation.
Another witness, J. Z. Sproles, a Correctional Officer I, who worked at the front gate at the Penitentiary, testified that on Wednesday, May 18, 1966 at about 2:00 o’clock P.M., Olin D. Wyatt came out to the gate and asked him to call appellant for him; that he informed Wyatt that would be unable to do so, but that if he got to see him he would let him know that Wyatt wanted to see him; that shortly after appellant’s wife came through the gate and he informed her that Wyatt wished to see her husband; that in response to this message appellant drove up to the gate in his pickup truck and asked Sproles about Wyatt’s whereabouts, but just at that time Wyatt happened to come by again and he and appellant engaged in a conversation concerning the sale of the truck; that Wyatt examined the truck and its tires, whereupon they agreed on the price of the truck; that appellant then told Wyatt he would meet him outside the Penitentiary gate on Friday, May 20, 1966 after 12:00 o’clock midnight and after he was discharged to consummate the deal. This witness further testifed that these negotiations took place in his presence.
Another witness, Leonard, a Correctional Officer II, who served as a roving Security Supervisor at the Penitentiary, stated that at about 4:30 o’clock p. m. on May 20, 1966, the telephone rang and picking up the receiver he learned that Wyatt was on the phone; that Wyatt told him he wanted to speak to appellant concerning his pickup truck; that he called appellant to the phone and the latter conversed with Wyatt over the phone; that at the conclusion of his telephone conversation with Wyatt, appellant informed the witness that he was going to sell his pickup truck to Wyatt that night for the price of $250.00, and that he was going to deliver the truck to Wyatt outside the gate after midnight and after Wyatt was discharged from the Penitentiary.
We conclude that although the deal for the sale of the truck was never actually *157 consummated because of the intervention and precautions taken by the authorities at the Penitentiary, who had learned beforehand of the negotiations between Wyatt and the appellant, the evidence convinces us and we find that appellant did knowingly violate Rule 16 of the regulations of the Penitentiary which specifically prohibits the trading or bartering with inmates of the Penitentiary, in that he did actually trade and barter with Olin D. Wyatt for the sale of appellant’s pickup truck for the sum of $250.00 at a time when Wyatt was an inmate of the Penitentiary.
Accordingly, the appeal is dismissed.”
Appellant cites three errors on the part of the Commission. They are (1) that the Department of Civil Service failed to issue subpoenas for appellant’s witnesses residing in the state who were employees of Louisiana State Penitentiary; (2) said Commission based its findings of fact and decision on mere assumption unsupported by any credible evidence; and (3) the alleged act complained of is not violative of Rule 16 of the rules of the Penitentiary.
With respect to Specification 1 above the record is completely void of any request by appellant of the Commission for the issuance of any subpoenas. The record clearly shows that appellant through his attorney announced to the Commission that he was ready to proceed with the hearing. Appellant presented and rested his case without any objection being made or noted with respect to appellant’s request for the issuance of subpoenas or the reservation of any rights with respect to the Commission’s refusal to issue any subpoena. Accordingly, if appellant did in fact desire the issuance of additional subpoenas prior to the hearing, he is deemed to have waived any objection for the Commission’s refusal to comply by not timely objecting and reserving his rights thereunder.
With respect to Specification of Error 2 above, the record fully supports the findings of fact as set forth in the written opinion of the Commission which we have quoted above. It is the well settled jurisprudence of this state that decisions of the Civil Service Commission as to findings of fact are final and the Court of Appeal is limited to the determination of questions of law only and is without authority to inquire into weight and sufficiency of evidence to support the charge. LSA-Const. Art. 14, § 15(0) (1). Appellant’s contention that the evidence does not uphold his dismissal for violating Rule 16 of the Department’s General Order Number 26 is without merit. The question of weight and sufficiency of evidence is one properly directed to the Commission and this court will not upset a factual finding by the Commission where there is evidence in the record to uphold it. Broussard v. State Industrial School for Colored Youths, 231 La. 24, 90 So.2d 73; Spruill v. Louisiana Wildlife & Fisheries Commission, La.App., 183 So.2d 141. It is only where the record is barren of any evidence to support the findings of the Commission that a question of law thereby arises, thus vesting jurisdiction in the Court of Appeal for a review as to the validity of the action taken by the Commission. Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422; Mayerhafer v. Department of Police of the City of New Orleans, 235 La. 437, 104 So.2d 163; Danna v. Commissioner of Insurance, La.App., 194 So.2d 753.
Appellant urges in support of its contention as to Specification 3 above that he did not violate Rule 16 and that the conclusion of the Commission to the contrary is an error in law which vests this court with jurisdiction and authority to review. In brief appellant urges that the words trade and barter should be given the same meaning as the common law contract of trade or barter and that appellant did not violate said Rule 16 because the alleged transaction between himself and the in *158 mate was not intended or in fact consummated at a time Wyatt was in fact an inmate at the institution. We likewise hold that this contention is without merit.
Rule 16 in our opinion is very clear in its meaning, intent and purpose. It is true that in a technical sense there is a distinction between barter and trade in that barter implies an exchange of goods for goods; and, trade implies an exchange of goods for money. Such a strict interpretation as urged by appellant under the circumstances of this case is neither warranted or justified. The purpose of this rule and others similar is to set forth in as clear terms as possible a course and standard of conduct to be adhered to and followed by employees at the Penitentiary. If the rule is clear and unambiguous and sets forth in meaningful and understandable terms conditions by which persons to be governed thereby can reasonably interpret the same, it must be complied with. This record amply supports the finding that appellant was acquainted with and knew the implication of his actions in violating this rule. The position taken by appellant is that he could negotiate with an inmate so long as his negotiations were not consummated in a final transaction while the inmate was still subject to confinement at the Penitentiary.
 Dismissal of a civil service employee is not warranted unless the violation or activities complained of has a real and substantial relation to his qualifications to the position for which he served. Bonnette v. Louisiana State Penitentiary, Dept. of Institutions, La.App., 148 So.2d 92; Cottingham v. Dept. of Revenue, 232 La. 546, 94 So.2d 662; Higgins v. Louisiana State Penitentiary, Dept. of Institutions, La.App., 154 So.2d 570. As a matter of law, we think that adherence to the rule forbidding trade or barter with inmates has a real and substantial relation to the qualifications of the Department’s employees. Said rule is to insure that the employees will not do anything to make it appear that one inmate will receive preferential treatment because of personal bargaining. It also recognizes that an employee is in an advantageous position over an inmate and is in a position to exact additional considerations from an inmate. The purpose of imprisonment for the commission of a crime is twofold. Society demands confinement for a period of time as a penalty for past wrongs and as a deterrent to future wrongs. Secondly, during the period of confinement there is an attempt to rehabilitate the offender. This process of rehabilitation demands that each inmate be treated equally and be governed by the same rules. If the rehabilitation system is to be given an honest attempt, the inmates must believe that a better existence is obtained through cooperation and integrity with the society about them. Any vestige of “beating the system” or “cutting corners” or “taking the shortcut” to receive better treatment by personal negotiation must be removed. The same is true of the opposite effect, that is, .inmates should not be made to feel that worse treatment comes about by their refusal to bargain or negotiate with persons charged with control over their confinement. Within the meaning we have placed upon the rule here violated, the actions by appellant had a real and substantial relation to the qualifications of his former position of Correctional Officer II.
Appellant’s action in negotiating with inmate Wyatt failed to culminate in a completed transaction only because it was known to and thwarted by his superiors. Such conduct if permitted to exist would in our opinion very definitely impair the administration of the affairs of the Penitentiary.
The penalty of dismissal from employment was properly considered by the Commission and they concluded it to be warranted. It is not within the province of this court nor are we inclined to overturn such a finding in a case as this.
*159 For the above and foregoing reasons the order of the Civil Service Commission is hereby affirmed at appellant’s costs.
Affirmed.