ON APPEAL FROM THE CIVIL SERVICE COMMISSION
ELLIS, Judge.
Lena T. Parrino was dismissed from her position as secretary at the Louisiana State University Medical Center by letter of dismissal dated February IS, 1967. The dismissal was appealed to the Civil Service Commission and was sustained by them on April 18, 1967. From that ruling, Miss Par-rino has prosecuted this appeal.
The letter of dismissal, which forms the basis of the record in this case, contains a number of general allegations of misconduct on appellant’s part, each of which was supported by specific allegations of various occurrences. In its opinion, the Commission found that a number of the allegations were either disproved by Miss Parrino, or were not supported by the evidence. They did not consider a number of the allegations which they found too vague to be defended against. However, they found that certain allegations in the letter were proven and that the misconduct shown thereby was sufficient to justify the disciplinary action taken. The letter of dismissal, omitting all of the disproved, unproven or vague allegations reads as follows:
“This is to notify you that your appointment as a Secretary at the Louisiana State University Medical Center will be terminated effective the close of business March 15, 1967.
“In view of your long years of service with the University and your past good working record, the decision to remove you from your position is based on a careful review of a recent investigation into your total work performance of the past two years, and in particular since September 1965. While we are reluctant to remove an employee who has been with the University as long as you have it is essential that your disruptive influence on the Department of Othorhino-laryngology and the Medical Center be *802 removed. Our efforts to make you a satisfactory employee have failed and you have refused to resign; therefore we have no alternative but to remove you from your position.
“The specific reasons for your removal are: •
* * * * * *
“3. You have failed to effectively work with other employees to the point that some have resigned because of you, and others refuse to go to you for clerical assistance as they normally should.
“As departmental secretary in the Department it was your responsibility to work effectively with both professional members and classified employees of the Department. You have failed to do this. Your interpersonal relationships have deteriorated to the point where several professional members of the Department refuse to come to you for clerical assistance, except in an emergency; and several classified employees have resigned because of your interpersonal relationships with them. The following instances support this charge:
* * * * * *
“b. On September 15, 1965, at about 9:30 a. m. you had an argument with Mrs. Christine Sims over the proper disposition of coffee grounds and the preparation of fresh coffee. The argument ended with a statement by you to the effect that only a “hillbilly” would dump coffee grounds in a waste basket without first lining the basket with paper. Mrs. Sims’ work performance amidst tears that day was worth less and she never again appeared for work. Later Mrs. Sim’s husband called to say that she would no longer be working with the L.S.U. Medical Center.
* * * * * *
“4. Your work performance has deteriorated to such a point that in the past year it has become unacceptable. This is particularly true since your last efficiency rating.
“a. Dr. John Peterson, Head of the Speech and Hearing Teaching and Services Programs of the Department of Othorhinolaryngology indicates that specifically your typing accuracy has deteriorated to the point that it is not commensurate with your position as Secretary, and that your ability to take and transcribe shorthand is limited. Dr. Peterson says your proofreading of manuscripts, letters, and reports is frequently unreliable. Dr. Peterson also indicates that it has been observed that for over a year you have been frequently uncooperative and undependable in assignments given to you. The day to day personal relationships between you and your co-workers and the professional staff is erratic and unpredictable, which produces a very unstable work environment and seriously handicaps your own productivity as well as that of the entire department.
“b. Dr. Irving M. Blatt, Professor and Head of the Department of Otorhino-laryngology, indicates that since you were promoted to the rank of Secretary your work performance has greatly deteriorated; that is, your typing is poor commensurate to your rank, your stenography is inaccurate, interpersonal relationships are threatening, work hours are erratic and your general behavior on the job is such that irreparable damage has been done through July 1966 between you and other staff members to the point that resignations of classified employees at the secretarial level have occurred and resignations at the technician level have been threatened.
“Dr. Blatt indicates that since you have been moved to the Bienville project you apparently manufacture your own hours of work, that you are not available when members of the professional staff need your assistance, and that you have shown no initiative to determine what the pro *803 fessional staff’s needs would be for secretarial work.
* * * * * *
“5. On several occasions you have displayed insubordinate behavior which was disrespectful and inappropriate. The following instances support this:
“a. On January 19, 1966, Dr. Blatt asked you to take a letter to the Chancellor’s Office for translation into Spanish. This translations was to be done by Mr. George Thurber’s secretary. During the lunch hour you took the letter to the Chancellor’s Office, threw it to Mr. Thurber’s secretary and in a belligerent manner said “Here, type this for Dr. Blatt” and walked out. On July 1, 1966, when Dr. Blatt pointed this out to you in giving you reasons why you were not getting a merit increase, you said “That’s the way to treat prostitutes.”
“b. On May 9, 1966, when Dr. Blatt re-; turned from the operating room later than usual, which caused many patients to be kept waiting approximately two hours beyond their scheduled appointments, one of the patients, Mrs. Loretta Gougeau, indicated that she had to leave early and requested that she be seen right away. You said to Dr. Blatt in front of more than nine patients “I don’t know why people come to you, you treat them like dogs.”
“c. On May 30, 1968, you were directed by Dr. Blatt to start a file on Nu Sigma Nu Medical Fraternity, Beta Psi Chapter; as he was the Faculty Advisor to that organization. You were informed that you would be responsible for correspondence concerning business matters of that organization. Your response was that this was not University business and that if you did the work you would receive extra remuneration. Dr. Blatt then had to order you to perform the assigned task.
“It is realized that dismissal is a very drastic action to take especially since you have been employed with the University for nearly nineteen years, however it is felt that no other alternative is available. Our efforts to help you correct your poor work performance, belligerence, and moodiness have been to no avail. On two occasions July 1 and November 1, 1966, you were not recommended for increases in salary. When Dr. Blatt tried to point out instances of your work performance that prohibited his recommending salary increases for you, your attitude was belligerent and was such that you could not accept the fact that you were not performing your duties satisfactorily in an effort to give you a new environment hoping that perhaps you might be able to function more efficiently you were moved to the Bien-ville property to establish the secretarial function for that part of the Department of Otorhinolaryngology. You have not been able to accept this as a corrective action and you are still continuing to perform unsatisfactorily. The instance with Mr. Frank Deslatter as well as your unavailability to the professional staff members at Bienville points this out, as does your general complaints to anyone that will listen, to the way that you are being treated. Thus, it is felt that there is no alternative to your being terminated, as regretable as this may be.
“Very truly yours,
“William W. Frye
“Chancellor
“WWF/vsg”
Appellant’s main attack on the ruling of the Commission is not directed to the findings of fact. At the outset, we can say that our perusal of the record has convinced us that the findings of fact by the Commission are amply supported by testimony and exhibits found therein.
Specification of error Number One deals with the failure of the Commission to grant a motion to strike all allegations of misconduct occurring prior to March 31, *804 1966. The motion is based on Miss Par-rino’s Standard Service Rating Report for the period ending on that date, which is in evidence, the relevant portion which reads as follows:
“I am glad to inform you that you performed your duties in a manner which met or exceeded the standards established for your position.
■“While your performance of each phase' of your activities is considered standard or better, there are noted below specific comments which will be of interest to you concerning the quality or quantity of your work, ability to get along with others and/or our evalution of your dependability, including attendance, and so forth.
“Remarks — Excellent work.”
Appellant contends that, under the Civil Service Rules, an employee has a vested right in the efficiency rating, and that, once awarded to an employee, it can be neither questioned nor rescinded. It is further argued that no alleged misconduct, occurring during a period in which an employee is rated as excellent, can form the basis for his dismissal, that no evidence thereof should be admitted. The only rule or other authority cited in support of the proposition is Rule 10.2(b), which provides that a service rating becomes “official” when signed by the appointing authority.
We are of the opinion that the fact of the service rating is one which should be considered in weighing the evidence both for and against appellant. However, we cannot find, in the absence of specific authority, that a service rating has the effect of precluding the admission of evidence of misconduct during the period covered thereby. Appellant’s supervisor testified that the “excellent” rating was given her, as a long time employee, to boost her morale at a time when she was undergoing great emotional stress. This explanation was accepted by the Commission, and it was within their authority to do so.
Specification of error Number Two alleges that paragraphs 4a and 4b of the letter of dismissal is so vague, in view of the fact that no definite dates or times were set forth therein, that it would be impossible to defend against it. Civil Service Rule 12.3 requires that detailed reasons be stated for the action taken, which comprehends a fair and clean statement of misconduct of the employee, including, whenever pertinent, times, dates, places and amounts. Hays v. Louisiana Wild Life and Fisheries Commission, 243 La. 278, 143 So.2d 71 (1962). It is pointed out in that case that the employee has the burden of disproving the facts set forth in the letter of dismissal, and unless the facts are detailed as required by Rule 12.3, the employee would not be able to prepare his case properly on appeal.
We think that the Commission was correct in considering paragraphs 4a and 4b, since these deal in the general manner in which Miss Parrino carried out the duties of her position. Certainly these allegations sufficiently apprised Miss Parrino of the nature of the charges against her, and we see no reason why an adequate defense could not be prepared.
The third specification of error deals with the same questions as do the first two, which have already been disposed of. Specifications of error four and six deal with findings of fact by the Civil Service Commission. Since we have already stated that there is ample evidence in the record to substantiate the findings of fact, and since the findings of fact are final so long as there is any evidence to justify them, we do not feel it necessary to comment thereon.
Specification of error Number Five states that the Commission erred in finding that the evidence submitted by the appointing authority warranted appellant’s discharge. It is well settled that such a finding is largely within the discretion of the appointing authority, and will not be disturbed by the Commission or the Courts *805 unless shown to be arbitrary, capricious or politically motivated. Broussard v. State Industrial School for Colored Youths, 231 La. 24, 90 So.2d 73 (1956). There is certainly a direct relationship between the findings of misconduct by appellant and the efficient conduct of the office where she was employed, and there is no political or personal motivation on the part of the appointing authority reflected in the record.
We find no error in the ruling complained of, and it is affirmed at appellant’s cost.
Ruling affirmed.