# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

DAVID HUTTON,           )

                       )

     Plaintiff/Appellee,     )

                       )    Giles Chancery

                       )    No. 8901

VS.                   )

                       )    Appeal No.

                       )    01-A-01-9601-CH-00023

RUTH E. JOHNSON, Commissioner )

of Revenue, State of Tennessee,   )

                       )

     Defendant/Appellant    )

## DISSENTING OPINION

**FILED**

November 8, 1996

Cecil W. Crowson
Appellate Court Clerk

The majority has decided that Tenn. Code Ann. § 67-6-510 (1994) permits the purchaser of a used jet aircraft to reduce his state tax liability by deducting the value of a previously owned prop-driven aircraft from the purchase price of the jet aircraft. I do not agree that Tenn. Code Ann. § 67-6-510 applies to the purchase of the jet because the transaction does not involve a trade or series of trades.

## I.

David Hutton decided to replace his prop-driven aircraft with a jet aircraft. Since he had not identified the particular aircraft he wished to purchase, he entered into an "exchange agreement" in June 1993 with Bell Aviation, Inc. that embodied a series of transactions structured as a deferred exchange of "like-kind" business property under I.R.C. § 1031 (1988). In the first transaction, Mr. Hutton agreed to sell his prop-driven aircraft to Bell for $1,142,000.[1] In the second transaction, Mr. Hutton agreed to "contract for the acquisition of" a replacement aircraft and

---

[1]For its part, Bell agreed to use $512,913.48 to pay off the loan secured by the prop-driven aircraft and to hold the remaining $629,086.52 at interest to be applied toward the purchase of the jet aircraft. For the purposes of this transaction, the parties agreed that the "equity property value" of the prop-driven aircraft was equal to the net proceeds of the sale available to be applied toward the purchase of the jet aircraft, that is $629,086.52.

to assign this contract to Bell.[2]  In the third transaction, Mr. Hutton agreed to assign his interest in the contract to purchase the replacement aircraft to Bell, and Bell agreed to "convey" the replacement aircraft back to Mr. Hutton[3] and to apply the $629,086.52 to the purchase price of the replacement aircraft.  If Mr. Hutton did not purchase a replacement aircraft within 180 days after selling his prop-driven aircraft to Bell, the exchange agreement required the escrow agent to pay the $629,086.52 over to Mr. Hutton.[4]

The transaction occurred precisely as the parties envisioned.  Mr. Hutton conveyed his prop-driven aircraft to Bell in June 1993.  Bell used $512,913.48 to pay off the loan on the prop-driven aircraft and deposited the remaining $629,086.52 with the designated escrow agent.  Then Mr. Hutton, rather than Bell, undertook to locate a replacement aircraft.  In December 1993, he entered into a used aircraft purchase agreement with Cessna Aircraft Company in which he agreed to purchase a 1985 Citation S/II jet for $2,250,000.  The agreement reflected Mr. Hutton's $112,500 deposit[5] but also reflected that the purchase price was not being reduced by a "trade allowance."  The agreement also specifically stated that it was not assignable except on prior written consent of Cessna.[6]

---

[2]*See* Exchange Agreement ¶ SECOND (B).  In another portion of the agreement, Bell agreed to use its best efforts to "acquire" any replacement aircraft identified by Mr. Hutton.  *See* Exchange Agreement ¶ FOURTH (B).  However, the exchange agreement also provided that Bell had no obligation to "locate, negotiate for or acquire" a replacement aircraft.  *See* Exchange Agreement ¶ FIFTH (A).

[3]The exchange agreement did not require Bell to actually convey the replacement aircraft to Mr. Hutton.  It defined Bell's "conveyance" to include "a direct conveyance from the third party seller to . . . [Mr. Hutton], at the direction of, and in satisfaction of the obligations of Bell." *See* Exchange Agreement ¶ THIRD (B).

[4]*See* Exchange Agreement ¶ FOURTH (C)(3).  In order to obtain an exemption from federal taxation, I.R.C. § 1031(a)(3) requires the property to be identified and the exchange completed within 180 days.

[5]There is no evidence in the record that the deposit for the replacement aircraft came from the proceeds of the sale of Mr. Hutton's prop-driven aircraft to Bell.

[6]Section IV(7) provided, in part: "This Agreement, including the rights of Purchaser [Mr. Hutton] hereunder, may not be assigned by Purchaser except to a wholly-owned subsidiary or successor in interest by name change or otherwise and then only upon the prior written consent of Seller [Cessna]. . .." *See* Used Aircraft Purchase Agreement § IV(7).

On December 17, 1993, Mr. Hutton executed an "assignment" of his interest in the contract with Cessna to Bell. On the same date, Bell directed the escrow agent to pay over the proceeds of the sale of the prop-driven aircraft to Cessna and also, by letter, "directed" Cessna to convey the Citation to Mr. Hutton. The closing for the sale of the Cessna Citation occurred on December 20, 1993.[7] The record contains no evidence that Cessna ever received Bell's "direction" or that it ever agreed in writing to Mr. Hutton's "assignment" of the contract to Bell. The assignment was not a necessary ingredient for the closing between Cessna and Mr. Hutton.

Mr. Hutton did not pay Tennessee use tax on the Cessna Citation. On September 2, 1994, the Tennessee Department of Revenue sent Mr. Hutton a notice of delinquency stating that he owed $178,866 in tax, penalty, and interest. The amount of the tax was calculated on the Cessna Citation's $2,250,000 purchase price. Mr. Hutton immediately paid $71,403, although he insisted that he should not be required to pay additional tax because Tenn. Code Ann. § 67-6-510 permitted him to deduct the value of the prop-driven aircraft ($1,142,000) from the purchase price of the Cessna Citation ($2,250,000). When the department disagreed, Mr. Hutton paid the remainder of the disputed tax, penalty, and interest and filed suit in the Chancery Court for Giles County seeking a refund. Although they disagree with regard to amount of the trade-in credit, both the trial court and a majority of this panel agree that Mr. Hutton is entitled to a trade-in credit under Tenn. Code Ann. § 67-6-510. I do not agree that Mr. Hutton is entitled to a trade-in credit under the facts of this case.

## II.

It is axiomatic that statutes imposing tax liability are construed against the taxing authority and, conversely, that statutes providing exemptions from taxation are construed against the taxpayer. *AFG Indus., Inc. v. Cardwell,* 835 S.W.2d 583, 584-85 (Tenn. 1992); *Covington Pike Toyota, Inc. v. Cardwell,* 829 S.W.2d 132, 135 (Tenn. 1992). Even though these statutes are construed strictly, the

---

[7]Mr. Hutton actually took possession of the Cessna Citation on January 20, 1994.

courts must still give effect to their clearly expressed purpose, *Stratton v. Jackson,* 707 S.W.2d 865, 866 (Tenn. 1986), and must construe the words of the statute using their ordinary sense, without any forced or subtle construction. *Nashville Golf & Athletic Club v. Huddleston,* 837 S.W.2d 49, 53 (Tenn. 1992); *Jersey Miniere Zinc Co. v. Jackson,* 774 S.W.2d 928, 930 (Tenn. 1989).

Taxpayers have the burden of demonstrating that they are entitled to a tax exemption. *Tibbals Flooring Co. v. Huddleston,* 891 S.W.2d 196, 198 (Tenn. 1994); *American Cyanamid Co. v. Huddleston,* 908 S.W.2d 396, 400 (Tenn. Ct. App. 1995). This burden has been characterized as "heavy and exacting." *Pan Am World Servs., Inc. v. Jackson,* 754 S.W.2d 53, 55 (Tenn. 1988); *Rogers Group, Inc. v. Huddleston,* 900 S.W.2d 34, 36 (Tenn. Ct. App. 1995). Thus, in order for Mr. Hutton to be entitled to an exemption from the use tax under Tenn. Code Ann. § 67-6-510, he must demonstrate that his purchase of the Cessna Citation involved a "trade" or "series of trades" in which "used articles are taken . . . as a credit or part payment on the sale of new or used articles."

Tenn. Code Ann. § 67-6-510 applies to trade-in allowances - that is the value of property taken in lieu of money as full or part payment for the purchase of other goods or property. The statute's use of the phrase "series of trades" indicates that it should not be limited to one-step transactions. However, each transaction must still be a "trade" if Tenn. Code Ann. § 67-6-510 is to apply. A "trade" connotes the exchange of goods for money. *Seegle v. State Dep't of Insts.,* 198 So. 2d 154, 158 (La. Ct. App. 1967).

I can find no "trade" or "series of trades" in this case. Mr. Hutton's sale of his prop-driven aircraft to Bell did not involve a trade. It was simply the sale of an aircraft for $1,142,000. Similarly, Mr. Hutton's purchase of the Cessna Citation, by the very terms of the sales agreement, did not involve a trade. Finally, Mr. Hutton's attempted assignment of his contract with Cessna, whether effective or ineffective, did not involve a trade.

Likewise, I do not believe that the "step-transaction doctrine" should be used to transform these transactions into one involving a "trade" or "series of trades." The "step-transaction doctrine" is a more precise way to apply the established concept that substance should prevail over form. *McDonald's Restaurants of Ill., Inc. v. Commissioner,* 688 F.2d 520, 524 (7th Cir. 1982); *Koch v. Commissioner of Revenue,* 605 N.E.2d 301, 306 (Mass. App. Ct. 1992). It permits the courts to disregard intervening meaningless transactions undertaken solely to obtain more favorable tax treatment. *Penner v. County of Santa Barbara,* 44 Cal. Rptr. 2d 606, 610 (Ct. App. 1995). It does not permit the courts to manufacture facts that never occurred. *Greene v. United States,* 13 F.3d 577, 583 (2d Cir. 1994).

Mr. Hutton's assignment of his interest in his contract with Cessna to Bell and Bell's return assignment to Mr. Hutton are without question meaningless transactions undertaken solely to obtain more favorable tax treatment. As a matter of law, these assignments had no effect on either party's rights and obligations under Mr. Hutton's contract with Cessna because they were not the type permitted by the contract. More importantly, the record contains no evidence that Cessna ever agreed to, or even knew about, the assignment. When these assignments are disregarded, all that remains are two separate contracts - the contract between Mr. Hutton and Bell and the contract between Mr. Hutton and Cessna.

The first contract could not have contemplated the second contract because Mr. Hutton had not found a replacement aircraft when the first contract was signed. Similarly, the contracts were not interdependent because legal relationships created by the first contract did not depend on the completion of the series of transactions. The first contract did not require Bell to find or acquire a replacement aircraft. Had Mr. Hutton not purchased a replacement aircraft within 180 days, the escrow agent would simply have paid over to him the proceeds of his contract with Bell.

Accordingly, I would reverse the trial court because Mr. Hutton has not met his burden of proving that he is entitled to an exemption under Tenn. Code Ann. § 67-6-510 for the value of the prop-driven aircraft he sold to Bell. For the purposes of this particular transaction, his use tax should have been calculated on the full $2,250,000 price of the Cessna Citation.

_____
WILLIAM C. KOCH, JR., JUDGE