LANDRY, Judge.
Mrs. Crickett Waldroup appeals from decisions of the Civil Service Commission (Commission) sustaining her unsatisfactory rating and subsequent discharge from the position of Editor I, in which she was employed in permanent status by the Louisiana State University Press (Press), a Department of Louisiana State University (University). We affirm.
On January 3, 1968, appellant received a probationary appointment as Editor I with the Press. Upon expiration of her six month probationary period, her then immediate superior, R. L. Wentworth, entertained some doubt as to the advisability of conferring permanent status on plaintiff, but nevertheless requested a three month extension of plaintiff’s probationary period for further evaluation of plaintiff’s work. On March 31, 1969, appellant was given a satisfactory rating and her status then became permanent. During the ensuing rating period, which ended March 31, 1970, *415 her superior found her work unsatisfactory. On April 30, 1970, plaintiff was notified she had been given an unsatisfactory rating for the period just ended. Plaintiff appealed to the Commission on May 27, 1970, seeking a reversal of her unfavorable rating. The adverse rating was affirmed by a reviewing committee appointed by the University from which determination plaintiff also appealed. On September 17, 1970, plaintiff was notified she had been rerated in accordance with Civil Service regulations and found again to be unsatisfactory, and that her employment would be terminated as of October 9, 1970. Plaintiff appealed this ruling also.
In affirming plaintiff’s dismissal, the Commission found:
(1) Appellant made editorial changes in the work of authors which changed the sense of what the author was endeavoring to say, and she made editorial changes calculated to render passages more readable but instead rendered them awkward. She did, on a number of occasions, overedit.
(2) Appellant did require editorial supervision through her term of service with the L S U Press, and, after about one (1) year of service as an editor she should have been capable of editing independently of close supervision. Her deficiencies placed an undue burden on her supervisor and impaired the efficiency of the Press.
(3) Appellant, as late as her editing of Philosophy at the Crossroads by Ballard (shortly before her discharge) made numerous errors in the nature of punctuation, carelessness, and inconsistency in the spelling of words and the capitalization of them. (Parenthetical information by the Court.)
(4) Appellant did not meet the standards established by the Director of the L S U Press for performance of editors.
In substance, plaintiff maintains her discharge was illegal because of discrimination against her. She also complains that the Commission’s rules fail to establish objective standards by which the work of an employee of her classification can be compared to other similar employees, and by which the fairness of such ratings can be determined on judicial review. Lastly, appellant contends the Commission committed procedural error in failing to order a requested pre-hearing discovery deposition from one of her former superiors.
Appellant’s claim of discrimination is founded on the following charges: Her rating superior was biased against her; different standards were used in rating her as compared with other editors; a double standard was applied to her; her rating superior did not observe applicable instructions contained in the State Personnel Manual; she was charged with errors not of her making, and there was no substantial cause for her dismissal.
In considering the appeal of a dismissed classified employee, the courts are confined to a review of questions of law only. LSA-La.Const. Article XIV, Section 15(0) (1) ; Uniform Rules, Courts of Appeal, Rule XVI, Section 1.
On appeal from an order of the Commission by a classified employee, the burden of proof is on the employee. LSA-La. Const. Article XIV, Section 15(N) (1).
In reviewing the decisions of the Commission, Courts may not weigh the sufficiency of the evidence. If there is some evidence to support the Commission’s findings of fact, the Courts are bound thereby. Villemarette v. Department of Public Safety, 129 So.2d 835, and authorities therein cited.
The Commission’s rules have the force of law, LSA-La. Const. Article XIV, Section 15(1); Day v. Department of Institutions, 228 La. 105, 81 So.2d 826.
*416 It is conceded that Civil Service Rules require periodic rating of classified employees, and that the only ratings allowed are either satisfactory or unsatisfactory. It is also conceded that Civil Service regulations provide that the factors to be rated are quantity of work, quality of work and adaptability.
Dr. Cecil G. Taylor, Chancellor, Louisiana State University, appellant’s appointing authority, testified that by letter dated September 18, 1970, he notified appellant her employment would be terminated as of October 9, 1970. Dr. Taylor also testified that, although he had no personal knowledge of appellant’s performance capacity, reports to him by appellant’s superiors indicated that appellant’s work was never satisfactory.
Appellant, Mrs. Waldroup, testified in essence that her superiors, Wentworth, East and Philebaum, were prejudiced, and “out to get her." She related a long history of employment which included free lance writing, newspaper editing, editing of military base newspapers, officers’ wives’ publications, book reviews and public relations work, but little experience editing manuscripts of books. She testified that East gave her less personal attention and training than accorded other Editors. She maintained she was consistently assigned the more difficult manuscripts. She testified that she solved problems in certain books when other Editors could not do so. As evidence of East’s bias, she stated that he called her a vile name, once told her that a punctuation mark was required in a certain place merely because he said so, and that he asked her not to smoke in his office. She also stated that East unjustly accused her of excessively loud talking. Appellant also maintained that on one occasion her files were rifled by an unknown party, and that someone, unknown to her, inserted errors in her work, which she pointed out to the Commission. In a comparison of her work with that of other Editors of the Press, appellant pointed out large numbers of errors in Press publications edited by other Editors.
Mr. Charles East, present Press Director, testified he was Assistant Press Director and Editor during most of appellant’s employment. He stated that both he and former Director, R. L. Wentworth, were not satisfied with appellant’s performance from the beginning of plaintiff’s employment. Nevertheless, Wentworth arranged an extension of appellant’s probationary period to further evaluate plaintiff’s work in the hope that plaintiff might eventually become a proficient Editor. In March of 1969, East gave plaintiff what he termed a marginal satisfactory rating. He stated that at this time, Mr. Wentworth wanted to discharge plaintiff, but that he, East, felt that plaintiff’s work would improve and become more satisfactory. He explained that it takes approximately one year to train an Editor to edit book manuscripts, which plaintiff was engaged to do. He stated that after about the first six months, an experienced Editor can determine whether a beginner will eventually become competent. He stated that an Editor’s prime duty is to clean a manuscript of typographical errors, and eliminate grammatical mistakes. East stated that consistency in spelling, and punctuation are also of utmost importance. These factors, he stated, are purely mechanical. Editing, East explained, that is, changing an author’s words to convey a desired meaning or intent, is purely a matter of style. According to East, a new Editor is given certain editing manuals, containing the basic rules regarding spelling, punctuation and other aspects of editing, for study. Check lists are also furnished for the beginner’s use. Manuscripts are assigned a neophyte, and the Editor works with the beginner by supervising and checking the work. East also stated it was his custom to work with new Editors, give them advice and assistance and point out their mistakes. He said he was constantly available for consultation and held group meetings at which any Editor could discuss his or her problems. *417 He stated that in the beginning, plaintiff’s greatest fault was a tendency to overedit, that is, change the sense of the author’s words where no change was necessary, or insert error where none existed. He also stated that most frequently plaintiff’s changes were no better than the author’s words, or were often worse, or else changed the author’s meaning entirely. He said that after about one year a supervisor should not have to edit behind an Editor, but that plaintiff never reached this point. He testified he had to continuously edit behind plaintiff to the extent it interfered with the performance of his other duties. He explained that there is no standard of errors an Editor is allowed to make, that is, no set number of spelling or punctuation errors per page, chapter or book an Editor is permitted. He conceded that evaluation of such work is primarily a matter of personal judgment. He acknowledged that plaintiff’s tendency to overedit improved somewhat, but that throughout her employment she made considerably more errors than the other Editors employed by the Press. Plaintiff’s errors, East stated, were excessive as regards spelling, capitalization, punctuation, style and failing to correct inconsistencies and typographical errors. East also objected to what he considered the highly unprofessional style of plaintiff’s letters to the authors with whom she communicated. He explained her letters appeared “too chatty.” East conceded the quantity of plaintiff’s work compared favorably with other Editors, but lacked the quality of the others. In this respect, he stated that toward the last the inordinate number of plaintiff’s mistakes were due to carelessness.
Mr. Leslie Philebaum came to the Press as Assistant Director when East was appointed Director in April, 1970. Phile-baum rated plaintiff’s work in September, 1970, and classed it as unsatisfactory. He stated he went over a manuscript edited by plaintiff, made a long list of errors noted, and discussed each error in detail with plaintiff. Plaintiff explained to him that she became so involved in the content of the manuscript that she overlooked details. He also stated that East had offered to discuss each Editor and his or her work, but that he, Philebaum, preferred to read behind each Editor and form his own opinion. He concluded he would have to read behind plaintiff continuously, and that she could not satisfactorily perform an Editor’s function of mechanically cleaning a manuscript of errors in spelling, punctuation and grammar. He also stated she could not efficiently delete inconsistencies, and neither could she “smooth a manuscript stylistically.” Philebaum also noted that by comparison, plaintiff made approximately three to five times as many errors as other Editors. He denied any bias or prejudice against plaintiff. He also denied that plaintiff was intentionally assigned difficult manuscripts to edit. East stated the policy was in general to assign work on the basis of whichever Editor was available at the time. He acknowledged, however, that occasionally an Editor was allowed to select a particular type of manuscript for which the Editor had a preference. East testified that a published book was the poorest criteria for judging editorial quality because it was impossible to determine whether errors therein were the result of editing or mistakes made in printing.
The record contains evidence which supports the Commission’s finding that appellant failed to establish her charge of discrimination. This determination is therefore binding upon the Court.
We find no basis for appellant’s claim that her discharge was improper because the Commission’s rules provide no objective standards by which the Press must gauge her qualifications in comparison with other similar employees. As previously noted, the Commission’s rules admit of only two ratings, satisfactory and unsatisfactory. The amplifying manual provides that rating shall be based on quantity of work, quality of work and adapta *418 bility. Neither the Civil Service Amendment to our State Constitution nor the rules of the Commission require that ratings be based purely on objective standards. Indeed, where rating is on professional skill, as in the case at hand, objective standards would be difficult both as to formulation and application. As pointed out by East and Philebaum, it is neither reasonable nor logical to say that so many errors per page, chapter or book are permitted, and anything in excess thereof denotes inefficiency. As these witnesses testified, evaluation of the quality of editorial work is, and of necessity must be, largely subjective. It must too depend in some measure upon the personal opinion of the supervising authority. We readily appreciate that opinion as to such seemingly objective matters as spelling, punctuation and style may differ among the scholarly and learned. The Commission rightly found that perhaps no two Editors would completely agree as to the perfect method for editing a book or manuscript. In such a technical and highly specialized area, reasonable latitude must be accorded the rater. So long as a method reasonable under the circumstances is employed and fairly applied, no rights of a classified employee are violated. It is of significance that appellant’s work was deemed unsatisfactory by three separate and successive rating superiors. The two who testified before the Commission gave cogent reasons why they deemed the quality of appellant’s work inferior in comparison to that of appellant’s fellow workers. Under the circumstances of this case, we deem the criteria of performance to be reasonable and to have been fairly applied.
Appellant’s contention that the Commission erred in not ordering Mr. East to be available for a deposition pursuant to Civil Service Rule 13.19(d) is without merit under the circumstances. The pertinent rule, in effect, states that the rules of evidence applicable in civil cases shall be observed in hearings before the Commission whenever appropriate and not in conflict with the Commission’s rules.
In refusing the order requested by appellant, the Commission alluded to its earlier opinion (Appeals of Munson, Neitzel, Carpenter and Smithson, Docket Nos. 244, 247, 248, 249) which stated that deposition and discovery devices provided for in civil trials may be used by a party before the Commission whenever such rules are amenable to practical application. The cited opinion, however, recognizes that the Commission does not possess constitutional and statutory authority to enforce compliance with such an order. Assuming, for argument’s sake, the Commission erred in declining to order East deposed, plaintiff has suffered no injury as a result of such refusal. Mr. East was in fact summoned and did in fact appear before the Commission as a witness. It also appears that he brought with him, and produced at the hearing every item requested by appellant. He was vigorously cross-examined by counsel for appellant.
The determination of the Commission is affirmed at appellant’s cost.
Affirmed.